**EXHIBIT 7**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| RYAN BENNETT, | ) |
| Plaintiff, | ) ) ) |
| v. | ) CAUSE NO. 1:21-cv-03027-RLY-MJD |
| THUNDERDOME RESTAURANTS, LLC, | ) ) ) |
| Defendant. | ) |

## DECLARATION OF RICKY TINDELL

I, Ricky Tindell, declare as follows:

1. I am over 18 years old, of sound mind, and have personal knowledge of the facts stated in this declaration. This declaration is based upon my own personal knowledge and, if called as a witness, I could and would competently testify to the facts set forth herein.

2. I've been working for Thunderdome Restaurants, LLC ("Thunderdome") since November 2015, and have been the Regional Managing Partner of two of Thunderdome's restaurants in Indianapolis, Indiana, Bakersfield and The Eagle, for the past five years. I was also the Regional Managing Partner of Krueger's Tavern ("Krueger's") in Indianapolis, Indiana until it shut down in 2020. In this position, in relevant part, I manage personnel and performance issues within the restaurants.

3. Thunderdome follows a progressive discipline policy when it comes to managing employees' performance issues. Depending on the nature and severity of the performance issue, Thunderdome management may provide the employee with a oral counseling or warnings and then proceed to written warnings. Thunderdome management generally provides oral counseling and on-the-job training in the moment that an issue arises and may not memorialize all

1

counselings or warnings in written form until it appears that progressive discipline may be more effective to accomplish remediation. In addition, management sometimes considers transferring the employee to another restaurant location or position to help the employee better perform.

4. I was Wesley Ryan Bennett's top-line supervisor during his employment with Thunderdome from July 27, 2018 through October 26, 2019.

5. Mr. Bennett first began as an Assistant Kitchen Manager in the Bakersfield restaurant in Indianapolis. Throughout his employment at Bakersfield, Mr. Bennett consistently underperformed, and Thunderdome management addressed his performance using progressive discipline. I spoke with Mr. Bennett on multiple occasions during his time at Bakersfield about his poor work ethic when management would discover that he was missing for long periods of time on unauthorized breaks. Sometimes, management would catch Mr. Bennett smoking during peak hours in violation of Thunderdome's smoking policy that prohibited breaks during peak hours posted in each restaurant. Other times, Mr. Bennett would claim that he was getting "medication" from his car for 30 to 45 minutes at a time. During our conversations, Mr. Bennett agreed that it did not require him 30 to 45 minutes to take his medication, but he continued to go missing for long periods of time during his shift. Whenever I provided Mr. Bennett with oral counseling on these issues, he was combative and not receptive to the feedback. After the kitchen staff continually saw Mr. Bennett's poor work ethic and that he was repeatedly missing during his shifts, they lost respect for him as their direct manager.

6. In May 2019, Siobhan Stephenson, Assistant General Manager at Bakersfield, reported to me that Mr. Bennett's poor performance had caused two back-of-house employees to walk out of their shifts. At the time, I told Ms. Stephenson that I would speak to Mr. Bennett

about this issue, so I believe I likely orally counseled Mr. Bennett on this issue in particular. [Ex. # (Bennett Dep Ex. 2).]

7. On or about July 15, 2019, given Mr. Bennett's performance issues, Thunderdome reassigned him from Bakersfield to Krueger's. I made the decision to reassign Mr. Bennett because I hoped he would be able to better perform at Krueger's since it was a slower restaurant with a smaller kitchen and menu than Bakersfield. Mr. Bennett, however, did not improve his performance while at Krueger's. Rather, Mr. Bennett continued to go missing during his shifts and was caught multiple times smoking during unauthorized times in violation of the no-break-during- peak times policy. In each instance, Thunderdome management would orally counsel Mr. Bennett regarding these performance infractions.

8. As a result of his continued performance issues, on or about August 12, 2019, I again reassigned Mr. Bennett to The Eagle restaurant because it had a larger staff that I hoped could provide more structure and support for him.

9. On August 23, 2019, Mr. Bennett reported that he had suffered a workplace injury. Thunderdome management immediately filled out an injury report and sent Mr. Bennett for medical care. Mr. Bennett's physician released him to work with restrictions. From August 23, 2019 through the end of his employment on October 26, 2019, Thunderdome accommodated Mr. Bennett's work restrictions that were identified by his medical providers by providing him with light duty work. Specifically, Thunderdome assigned Mr. Bennett to manage the expo line while being seated in a chair or on a stool. Mr. Bennett never requested time off or told me that he needed time off because of his workplace injury. In addition, Mr. Bennett never asked not to be included in the schedule on any particular day because of his workplace injury. After the incident had been reported to Vice President of Human Resources/Director of Team Member

Experience, Kier Muchnicki, and he provided us with this work restrictions, which were able to accommodate, it was business as usual.

10. Despite the multiple oral counselings and opportunities to improve through two transfers, Mr. Bennett's poor performance continued at The Eagle. On one occasion, he left in the middle of his shift while he was working the expo line and caused extreme confusion with the staff because they could not identify which food items went to which tables. This significantly affected the business operation for that shift. When Thunderdome management orally counseled him about this incident, Mr. Bennett became highly combative, and did not improve his performance.

11. In October 2019, Mr. Bennett's poor performance seemed to snowball and he committed six different infractions. On October 9, 2019, he came in late for his shift. Since Thunderdome management, including myself, had previously provided Mr. Bennett with multiple oral counselings and had not seen any progress, it was time to proceed with a written warning. Accordingly, Collin Martin, then Assistant General Manager and Kitchen Manager at The Eagle, issued Mr. Bennett a first written warning for being late. On October 10, 2019, Mr. Martin was made aware that Mr. Bennett had improperly completed the food order on September 9, 2019, which resulted in a direct loss to Thunderdome. As a result, Mr. Martin issued Mr. Bennett a second written warning.

12. On October 23, 2019, Mr. Bennett committed four separate performance infractions, including violating the break policy while smoking on an unauthorized break during peak hours, failing to properly place the food order again the, improperly completing the prep list, and leaving his shift early without approval. Since Mr. Bennett had previously received oral counselings on multiple occasions and had two previous written warnings, Thunderdome issued

him four separate final written warnings. Mr. Collin informed me of the incidents, and I requested to meet with Mr. Bennett.

13. On October 24, 2019, Mr. Bennett reported to work, and Mr. Martin sent him home until I could meet with him about his October 23, 2019 infractions.

14. On October 26, 2019, David Downs, then General Manager at The Eagle, and I met with Mr. Bennett to discuss his performance on October 23, 2019. During the meeting, I asked Mr. Bennett about the four infractions, but he refused to take any accountability for his actions and did not provide explanations for his behavior. During the meeting, Mr. Bennett never stated that his performance issues were related to his workplace injury. At some point during the meeting, because of Mr. Bennett's history of repeated performance issues, his failure to take responsibility for his poor performance, his failure to make the appropriate changes to his performance, and the fact that we could not transfer him to another restaurant environment, I made the decision to terminate his employment effective immediately.

15. My understanding is that Mr. Bennett has alleged in this lawsuit that Dayton Neely, then Assistant General Manager at The Eagle, gave him permission to take a break on October 23, 2019. Mr. Bennett, therefore, argues that he was not smoking in violation of the break policy. However, neither Mr. Bennet nor Mr. Neely ever told me that Mr. Neely had given Mr. Bennett permission to go on break on October 23, 2019. In addition, Mr. Neely signed the final written warning as a witness that Mr. Bennett was caught smoking during an unauthorized break.

16. Mr. Bennett's workplace injury had nothing to do with his discipline or termination.

[*Signature Page to Follow*]

## VERIFICATION

I declare under penalty of perjury that the foregoing is true and correct and that this declaration is executed on __10/31/22__.

_____
Ricky Tindell

6