UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| RYAN BENNETT,<br><br>       Plaintiff,<br><br>  v.<br><br>THUNDERDOME RESTAURANTS, LLC,<br><br>       Defendant. | )<br>)<br>)<br>)<br>)  CAUSE NO. 1:21-cv-03027-RLY-MJD<br>)<br>)<br>)<br>)<br>) |

**DEFENDANT'S MEMORANDUM IN RESPONSE IN OPPOSITION TO
PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, defendant Thunderdome Restaurants, LLC ("Thunderdome") submits the following response opposing the motion for partial summary judgment filed by plaintiff Ryan Bennett.[1]

I.  **INTRODUCTION**

It is undisputed that, during Mr. Bennett's short fifteen month tenure at Thunderdome, he demonstrated that he was a chronic underperformer. Thunderdome orally counseled Mr. Bennett on multiple occasions about his unacceptable performance when he would disappear for 30 to 45 minutes at a time during his shift leaving his staff to scramble to cover him. As the issues continued, Thunderdome transferred him between three restaurant locations hoping that the new structure and support would improve his performance. Mr. Bennett, however, refused to make the appropriate changes or accept responsibility for his performance. Ultimately, Thunderdome made the decision to terminate his employment because of his repeated poor performance that continued to cost the business money.

---

[1] On October 31, 2017, Thunderdome filed its own motion for summary judgment as to all claims Mr. Bennett asserted in this lawsuit. [Dkt. 42; Dkt. 43.] For the reasons set forth in Thunderdome's memorandum in support of their motion for summary judgment and those set forth in this response, the Court should deny Mr. Bennett's motion for partial summary judgment and grant summary judgment in favor of Thunderdome.

Despite these facts, Mr. Bennett filed a lawsuit alleging that he was terminated because Thunderdome retaliated against him for needing leave under the Family and Medical Leave Act ("FMLA") and for suffering a workplace injury and filing a worker's compensation claim. In addition, Mr. Bennett alleges that Thunderdome interfered with his right to leave under the FMLA. Mr. Bennett has now filed a motion for partial summary judgment on his FMLA interference claim.

However, as stated in Thunderdome's memorandum in support of its motion for summary judgment ("supporting memorandum") [Dkt. 43 at 3-16], there is no genuine issue of material fact in dispute related to Mr. Bennett's inability to demonstrate a FMLA interference claim. First, Mr. Bennett did not have a "serious health condition" during the relevant time because his injury was a temporary condition from which he fully recovered in a short period of time of only 2.5 months. Second, Mr. Bennett failed to provide sufficient notice of his intent to take FMLA leave because he admittedly never asked Thunderdome for time off for his injury and his medical records clearly establish that he could continue working with restrictions.

For these reasons, the Court should deny Mr. Bennett's motion for partial summary judgment and the enter summary judgment in favor of Thunderdome on all of Mr. Bennett's claims.

II.   **STATEMENT OF MATERIAL FACTS IN DISPUTE**

The undisputed facts set forth in Thunderdome's memorandum in support of its motion for summary judgment ("supporting memorandum") [Dkt. 43 at 3-16] support the granting of summary judgment in favor of Thunderdome on all of Mr. Bennett's claims and the denial of Mr. Bennett's motion for partial summary judgment. Consistent with the undisputed facts [*Id.*], Thunderdome disagrees with Mr. Bennett's characterization of the following material facts and legal conclusions as unsupported by and contrary to any evidence:

1. Mr. Bennett states that "[a]s a result of his double hernia, [Mr.] Bennett was forced to miss work at the Eagle. [Dkt. 41 at 4.]

**Thunderdome's Response:** This statement is misleading. Rather, from the date of Mr. Bennett's workplace injury on August 23, 2019 through the date of his termination on October 26, 2019, Mr. Bennett only took time off work on nine occasions to receive follow-up medical care for his workplace injury. [*See* Dkt. 43 at 12-16; Dkt. 42-3, Bennett Dep. 128:12-131:2, 279:22-24, 131:3-16; Dkt. 42-5, Tindell Dep. 43:4-7, 80:25-81:10; Dkt. 42-8, Tindell Decl. at ¶ 9; Dkt. 42-18 at 20-21.] Other than time off for medical care, Mr. Bennett never asked Thunderdome for time off of work because of his injury. [Dkt. 42-3, Bennett Dep. 128:12-131:2, 279:22-24, 131:3-16; Dkt. 42-5, Tindell Dep. 43:4-7, 80:25-81:10; Dkt 42-8, Tindell Decl. at ¶ 9.] In fact, Mr. Bennett did not want to take time off of work. [Dkt. 42-3, Bennett Dep. 102:5-9 (testifying that he could not afford to take time off work).]

2. Mr. Bennett states that "[r]ather than provide Bennett with any training regarding Thunderdome's obligations under the FMLA, rather than notify Bennett of his opportunity to take leave under the FMLA, and rather than engage in the interactive process required by the FMLA, Thunderdome terminated Bennett on October 26, 2019." [Dkt. 41 at 4.]

**Thunderdome's Response:** First, Mr. Bennett's allegations are just legal conclusions unsupported by and contrary to any evidence. Second, Mr. Bennett admitted that he knew that Thunderdome had an Employee Handbook in place during his employment [Dkt. 42-3, Bennett Dep. 133:7-12 (testifying that he knew Thunderdome had an Employee Handbook in place during his employment)], and the Employee Handbook contained its FMLA policy that sets forth the eligibility requirements and employee notification and reporting requirements [Dkt. 42-2 at Thunderdome000172-75; *see also* Dkt. 42-3, Bennett Dep. 133:7-12]. In addition to the FMLA

3

policy in the Employee Handbook and employee orientation where the FMLA policy is discussed, Thunderdome maintains posters in each of its restaurants, notifying employees of the FMLA provisions and identifying the Human Resources Department as the point of contact for any personnel questions. [Dkt. 42-4, Muchnicki Dep. 21:14-23, 22:3-9, 82:2-12; Dkt. 42-5, Tindell Dep. 34:25-35:4 (testifying that the restaurants have the FMLA notice posters hanging up).] Third, Mr. Bennett failed to provide sufficient notice to Thunderdome of his intent to take FMLA leave. [*See infra* Section III.B.; Dkt. 43 at 12-16, 23-25.] The legitimate business reason for Mr. Bennett's termination is addressed at Section II ¶ 4 below. [*See also* Dkt. 43 at 6-12, 23-25.]

3. Mr. Bennett states that "Thunderdome either knew or should have known that Bennett was entitled to or needed to take leave under the FMLA because Bennett was injured on the job while he was performing the essential duties of his job." [Dkt. 41 at 4.]

**Thunderdome's Response:** Mr. Bennett's allegation is just legal conclusions unsupported by and contrary to any evidence. Rather, as explained in detail in Thunderdome's supporting memorandum and again below, Mr. Bennett failed to provide sufficient notice to Thunderdome of his intent to take any time off, let alone FMLA leave. [*See* Dkt. 43 at 12-16, 23-25; *infra* Section III.B.]

4. Mr. Bennett states that "Thunderdome fired [Mr.] Bennett in violation of his federal and state law rights." [Dkt. 41 at 5.]

**Thunderdome's Response:** First, Mr. Bennett's statement that Thunderdome fired him in violation of his federal and state law rights and is just a legal conclusion unsupported by and contrary to any evidence. Second, the undisputed evidence shows that Thunderdome terminated Mr. Bennett's employment because of his repeated performance issues and failure to take accountability and make the appropriate changes throughout the 15 months and 3 reassignments

4

of his employment. [Dkt. 43 at 6-12; Dkt. 42-5, Tindell Dep. 65:11-66:13 (testifying that he had not made the decision to terminate Mr. Bennett prior to Mr. Bennett's behavior during the disciplinary meeting on October 26, 2019), 67:8-12 (testifying that Mr. Bennett's performance and inability to make the necessary changes was the only reason that he terminated him), 78:9-21 (testifying to same); *see also* Dkt. 42-8, Tindell Decl. at ¶¶ 14-16; Dkt. 42-7, Martin Dep. 31:20-32:10; Dkt. 42-10; Dkt. 42-11; Dkt. 42-12; Dkt. 42-13; Dkt. 42-14; Dkt. 42-15.] Accordingly, there was nothing unlawful about Thunderdome's reason for terminating Mr. Bennett. [Dkt. 43 at 6-12, 17-34.]

III.   **ARGUMENT**

As explained below and in Thunderdome's supporting memorandum [Dkt. 43], the undisputed facts in this case support the denial of Mr. Bennett's motion for partial summary judgment and the entry of summary judgment in favor of Thunderdome on all of Mr. Bennett's claims. In his motion for partial summary judgment, Mr. Bennett moved for summary judgment on his interference claim under the FMLA.

To prevail in an FMLA interference claim, Mr. Bennett must establish: "(1) []he was eligible for the FMLA's protections; (2) [his] employer was covered by the FMLA; (3) []he was entitled to take leave under the FMLA; (4) []he provided sufficient notice of [his] intent to take leave; and (5) [his] employer denied [his] FMLA benefits to which []he was entitled." *Goelzer v. Sheboygan Cty.*, 604 F.3d 987, 993 (7th Cir. 2010). Mr. Bennett's FMLA interference claim fails because he cannot establish the third and fourth prongs of his *prima facie* burden.

      A.   **Mr. Bennett cannot establish that he had a chronic condition because he completely recovered from his workplace injury in a short period of time.**

In his supporting memorandum, Mr. Bennett argues that Mr. Bennett's groin injury was a "serious health condition" under the FMLA because it was a chronic condition that required

5

continuing treatment. [Dkt. 41 at 6-8.] Mr. Bennett, however, ignores the other requirement of the definition of a chronic serious health condition that the condition continue over an extended period of time. The FMLA regulations define a chronic serious health condition as:

> Chronic conditions. Any period of incapacity or treatment for such incapacity due to a chronic serious health condition. A chronic serious health condition is one which:
> (1) Requires periodic visits (defined as at least twice a year) for treatment by a health care provider, or by a nurse under direct supervision of a health care provider;
> (2) Continues over an extended period of time (including recurring episodes of a single underlying condition); and
> (3) May cause episodic rather than a continuing period of incapacity (e.g., asthma, diabetes, epilepsy, etc.).

29 C.F.R. § 825.115 (c).

Despite what Mr. Bennett argues in his supporting memorandum, Mr. Bennett's groin injury cannot meet the definition of a chronic condition because it was a temporary condition from which he fully recovered in a short period of time. *See id.*; *see also* Dkt. 43 at 12-16, 18-22. While the regulations do not define "an extended period of time" and courts in the Seventh Circuit have not strictly defined any minimum duration that meets the requirement, other courts that have addressed the definition. In *Taylor v. Autozoners, LLC*, the court noted that "the language of the FMLA itself, its legislative history, and the regulations promulgated pursuant to that statute all suggest that to constitute a 'chronic' illness, the condition must exist for well more than a few weeks." 706 F. Supp. 2d 843, 852 (W.D. Tenn. 2010) (quoting *Flanagan v. Keller Prods., Inc.*, No. 00–542–M, 2002 DNH 047, 2002 WL 313138, at *7 (D. N.H. Feb. 25, 2002)). In reviewing the definition of "an extended period of time," the court in *Flanagan* explained that the U.S. National Center for Health Statistics defines a chronic condition *"as one of three month's duration or longer."* 2002 WL 313138, at *7 (emphasis in original); *see also* National Center for Health Statistics, Centers for Disease Control and Prevention, Summary Health Statistics for the U.S.

6

Population: National Health Interview Survey at 13 (2012), accessed at http://www.cdc.gov/nchs/data/series/sr_10/sr10_259.pdf ("Conditions lasting more than 3 months are classified as chronic."). Furthermore, the *Flanagan* court recognized that if a patient is going to completely recover from the ailment, then that "simply fails to constitute a chronic condition." 2002 WL 313138, at *7.

Here, Mr. Bennett's groin injury lasted approximately two and a half months from August 23, 2019 through his surgery on November 4, 2019. [Dkt. 42-22 at Thunderdome000205; Dkt. 42-3, Bennett Dep. 199:4-13, 261:10-17.] In addition, there is no evidence that he continued receiving any medical treatment for his injury after November 4, 2019. [*See generally* Dkt. 42-18; Dkt. 42-21 at Thunderdome000258-263 (showing that Mr. Bennett did not see Dr. Charles Rogers between August 4, 2019 and November 5, 2021); Dkt. 42-22.] The fact that Mr. Bennett's groin injury continued for at most two and a half months before being fully resolved shows that it did not continue over an extended period of time as it did not last "well more than a few weeks," and it does not meet the minimum three months required by the U.S. National Care for Health Statistics. Accordingly, Mr. Bennett's temporary groin injury, "from which [he] has completely recovered, simply fails to constitute a chronic condition," and thus, he cannot establish that he had a chronic condition under the FMLA. *Taylor*, 706 F. Supp. 2d at 852; *see also Hansler v. Lehigh Valley Hosp. Network*, 798 F.3d 149, 154 n.3 (3rd Cir. 2015) (assuming that a condition lasting for one month does not satisfy the "extended period of time" requirement to constitute a chronic condition under the FMLA); *Flanagan*, 2002 WL 313138, at *7 (holding that plaintiff's condition failed to constitute a chronic serious health condition as her condition "continued for, at most, a month before it was fully resolved").

For these reasons, the Court should deny Mr. Bennett's motion for partial summary judgment and should, instead, enter summary judgment in favor of Thunderdome on his FMLA interference claim.[2]

> **B.     Mr. Bennett did not provide notice of his intent to take FMLA leave because he did not request time off and his medical records indicated that he did not need time off and could work .**

Regarding the fourth prong of the *prima facie* test, Mr. Bennett's interference claim fails because his medical records from August 23, 2019 through October 26, 2019 show that he was able to work with restrictions and he never requested time off due to his injury. In his supporting memorandum, Mr. Bennett argues only that Thunderdome had constructive notice that he required FMLA leave because he "was injured on the job and needed to seek medical treatment for his injuries on eight occasions[, and Mr.] Bennett informed Thunderdome of his injury…." [*See* Dkt. 41 at 9.] Notice of an injury and subsequent medical treatment by itself, however, is insufficient to establish that Thunderdome was on notice of Mr. Bennett's intent to take FMLA leave. *See Matthys v. Wabash Nat.*, 799 F. Supp. 2d 891, 906 (N.D. Ind. 2011).

In *Matthys*, Matthys (plaintiff employee) suffered a workplace injury to her right wrist, sought medical attention, and was released to work with work restrictions. *Id.* at 894. Matthys then had four follow-up medical appointments and was released to work with restrictions each time. *Id.* at 894-95. At one point, Matthys went to see her own personal physician outside of the worker's compensation system and her physician provided that she could return to work with different restrictions. *Id.* Her employer, however, informed Matthys that she could not return to work until she provided the medical records from her personal physician. *Id.* As a result, Matthys was off work for a few days while she retained the records. *Id.* Matthys then, on at least one occasion,

---

[2] In addition, for the reasons set forth in Thunderdome's supporting memorandum, the Court should enter summary judgment in favor of Thunderdome on all of Mr. Bennett's claims. [*See* Dkt. 43.]

8

inquired regarding FMLA leave to cover her absences. *Id.* at 906. However, despite meeting with her supervisor about taking FMLA leave and speaking with the benefits coordinator, Matthys never actually followed through and submitted a request for FMLA leave. *Id.* Accordingly, the court found that, "although the evidence suggests that Matthys may have minimally-inquired whether FMLA leave could be used to cover her absences, the facts do not establish that Matthys provided a probable basis for FMLA leave on any occasion. For instance, … at the time Matthys discussed FMLA leave with [supervisor] on March 15, 2007, neither [the workers' compensation] medical department nor [her personal physician] had placed Matthys on medical restrictions that prevented Matthys from working. At least one court in this Circuit has found that '[a] release to work without restrictions is insufficient to establish notice of a request for FMLA leave due to the employee's serious health condition that makes her unable to perform her job.'" *Id.* (quoting *Niesse v. Gen. Elec. Co.*, No. IP 99–1457–C–T/G, 2001 WL 290382, at *7 (S.D. Ind. Jan. 31, 2001)).

Here, Mr. Bennett did even less than Matthys to inform Thunderdome of his need to take FMLA leave. Rather, Mr. Bennett testified that he never requested time off because of his injury. [Dkt. 42-3, Bennett Dep. 128:12-131:2 (testifying that, on August 28, 2019, he made a "general statement" to Mr. Tindell and Mr. Downs that he didn't know if he was able to do the job because he was in pain), 279:22-24 (testifying that he never requested FMLA leave from Thunderdome), 131:3-16 (testifying that it was up to the medical providers to decide if he was able to perform his job with or without restrictions).] Notably, Mr. Bennett never alleges in his supporting memorandum that he made any such request. [*See generally* Dkt. 41.] And the undisputed facts show that Mr. Bennett was aware that he had to fill out a request form if he needed time off and provide it to his manager. [Dkt. 42-3, Bennett Dep. 131:3-16.] Despite this, Mr. Bennett never submitted a request for time off due to his injury. [Dkt. 42-3, Bennett Dep. 128:12-131:2, 279:22-

9

24, *see also* 131:3-16; Dkt. 42-5, Tindell Dep. 43:4-7, 80:25-81:10; Dkt. 42-8, Tindell Decl. at ¶ 9.] Finally, like the medical records in *Matthys*, Mr. Bennett's medical records from August 23, 2019 through October 26, 2019 show that he was able to work with restrictions and do not indicate that he ever needed time off work other than to seek medical attention. [*See* Dkt. 43 at 12-16; *see generally* Dkt. 42-18 at 20-21.] Indeed, Mr. Bennett testified that he did not request time off because he was medically injured because he left "that up to the doctors" to determine if time off was appropriate. [Dkt. 42-3, Bennett Dep. 131:3-16.]

Further, Mr. Bennett has failed to provide citations to any relevant authority for his argument because the cases that he cites in his supporting memorandum do not support a finding that mere notice of an injury and need for medical attention is sufficient to establish notice of intent to take FMLA leave. [Dkt. 41 at 9-11.] Rather, although the courts in *Preddie v. Bartholomew Cons. Sch. Corp.*, 799 F.3d 806, 817 (7th Cir. 2015), *Gibson v. Ind. State Pers. Dep't*, No. 1:17-cv-01212-JPH-TAB, 2020 WL 1956120, at *2 (S.D. Ind. 2020), and *White v. Valeo Lighting Sys. N. Am., Inc.*, No. 4:19-cv-00226-TWP-DML, 2021 WL 5447075, at *11 (S.D. Ind. Nov. 22, 2021) held that plaintiff had provided sufficient notice of intent to take FMLA leave, each case involves distinguishable facts to what happened here. Specifically, each of those cases involve facts wherein the employee specifically provided notice to the employer that the employee needed *time off* because of the employee's own health condition or a family member's health condition. These cases are factually distinguishable to the undisputed facts that Mr. Bennett never requested time off for his workplace injury and his medical records indicated that he could work with restrictions. [Dkt. 42-3, Bennett Dep. 128:12-131:2, 279:22-24, *see also* 131:3-16; Dkt. 42-5, Tindell Dep. 43:4-7, 80:25-81:10; Dkt. 42-8, Tindell Decl. at ¶ 9; Dkt. 43 at 12-16; *see generally* Dkt. 42-18, 20-21.]

10

First, in *Preddie*, plaintiff employee did not merely inform his employer that his child had a serious health condition of anemia. 799 F.3d at 817. Rather, unlike Mr. Bennett, the employee informed his employer that he was "taking leave" to care for his son who had been hospitalized for sickle cell anemia. *Id.* In fact, the employee had already taken leave to care for his son and was requesting additional time off for his son's health condition. *Id.* Second, in *Gibson*, the court found that the employee had provided sufficient notice for need to take FMLA leave because she told her supervisor that she was stressed and depressed and needed time off. 2020 WL 1956120, at *1-2. Finally, in *White*, the court held that there was a triable issue of fact regarding whether employee's doctor's notes informing the employer that he needed time off for his illness was sufficient to inform employer of his intent to take FMLA leave. 2021 WL 5447075, at *12.[3]

Unlike the employees in *Preddie*, *Gibson*, and *White*, Mr. Bennett never requested time off for any reason outside of his nine medical appointments. [Dkt. 42-18, 20-21.] Indeed, Mr. Bennett testified that he did not request time off because he left "that up to the doctors" to determine if time off was appropriate. [Dkt. 42-3, Bennett Dep. 131:3-16.] In addition, unlike the doctor's notes in *White* that expressly stated that the employee needed time off due to illness, the undisputed facts show that Mr. Bennett's medical records from August 23, 2019 through October 26, 2019 show that he was able to work with restrictions and do not indicate that he ever needed time off work other than to seek medical attention. [*See generally* Dkt. 42-1; Dkt. 42-21; Dkt. 42-22.]

---

[3] In his supporting memorandum, Mr. Bennett cites to two other cases to support his argument that the Court should find that he provided sufficient notice of his intent to take leave because Thunderdome was aware of his workplace injury and subsequent medical condition. [Dkt. 41 at 10.] However, those cases also involve distinguishable facts where employees actually requested *time off* from their employers. *See Lutes v. United Trailers, Inc.*, 950 F.3d 359, 363, 366 (7th Cir. 2020) (finding that there was a genuine issue of material fact as to whether employer had sufficient notice that employee intended to take leave where employee "had done more than merely ask for time off—he provided a reason for his absence"); *Nicholson v. Pulte Homes Corp.*, 690 F.3d 819, 828 (7th Cir. 2012) (affirming summary judgment on behalf of employer in FMLA interference claim where employee failed to provide sufficient notice of intent to take FMLA leave where employee's comment on the possibility that she might in the future have a need to take time off to care for her father was too indefinite to put employer on FMLA inquiry notice).

Finally, Mr. Bennett also cites to *Byrne v. Avon Prods., Inc.*, 328 F.3d 379, 382 (7th Cir. 2003) in his supporting memorandum to argue that he provided sufficient notice of need to take FMLA leave. [Dkt. 41 at 10.] In *Byrne*, the court found that a material issue of fact existed because a significant change in an employee's behavior may be enough to notify the employer that employee needed to take FMLA leave where the employee was suffering from a "disabling mental condition" that prohibited him from informing his employer and his behavior changed drastically from being a model employee. *Id.* at 381-82. However, the holding in *Byrne* should not be applied to this case because it was decided on an outdated FMLA regulation that is no longer in effect and it is factually distinguishable.

First, the Seventh Circuit in *Byrne* relied on a previous version of 29 C.F.R. § 825.303(a), which stated that, when leave is unforeseeable, "[i]t is expected that an employee will give notice to the employer within no more than one or two working days of learning of the need for leave, *except in extraordinary circumstances where such notice is not feasible.*" 328 F.3d at 382 (adding emphasis). Based on this "extraordinary circumstances" exception, the court in *Byrne* concluded that an employee's extremely unusual behavior could, in some cases, be "*itself* notice that something had gone medically wrong, or perhaps [excuse] notice...." *Id.* at 381. The Seventh Circuit reasoned that if Byrne's sudden change in behavior was itself notice of his mental problems, or if Byrne had been unable to provide oral or written FMLA notice because of his mental problems, his employer should have classified his final two weeks of employment as FMLA medical leave rather than as misconduct. *Id.* at 382. However, effective January 16, 2009, the U.S. Department of Labor ("DOL") subsequently deleted the sentence relied on by the Seventh Circuit in *Byrne* and replaced it with language that currently reads: "[i]t generally should be practicable for the employee to provide notice of leave that is unforeseeable within the time

12

prescribed by the employer's usual and customary notice requirements applicable to such leave." 29 C.F.R. § 825.303(a). Now that the DOL has nullified the regulatory basis for the doctrine, courts have declined to create a constructive-notice exception to an employee's affirmative duty to notify his employer of the need for leave that might be FMLA qualifying. *See Scobey v. Nucor Steel-Arkansas*, 580 F.3d 781, 788 (8th Cir. 2009); *see also Guzman v. Brown Cnty.*, 884 F.3d 633, 639 at n.3 (7th Cir. 2018) (acknowledging that "other circuits have called the continued applicability of *Byrne* and its progeny into question in light of the 2009 amendments to 29 C.F.R. § 825.303(a). … That issue, however, has not been presented here, and its resolution is not necessary to the present case").

Second, the undisputed facts show that the extraordinary circumstances that may have applied to Byrne (a sudden change in behavior or an inability to provide notice because of a serious mental health condition that prevented him from informing his employer of the need for leave) do not apply to Mr. Bennett. As an initial matter, unlike Byrne, the undisputed facts show that Mr. Bennett's workplace injury was not a disabling mental condition that would have rendered him unable to provide notice of intent to take FMLA leave. In addition, as explained in detail in Thunderdome's supporting memorandum, Mr. Bennett's poor performance was not a drastic change in behavior. Rather, Mr. Bennett was a chronic underperformer since early on in his employment. [Dkt. 43 at 6-12.] Indeed, Thunderdome had orally counseled Mr. Bennett on his poor performance on multiple occasions and transferred him between three restaurant locations prior to his workplace injury. [Dkt. 43 at 6-12.] As a result, there is no evidence that Mr. Bennett's continued poor performance following his workplace injury was a drastic change in his behavior that should have put Thunderdome on notice of his need for FMLA leave, especially given that his medical records provided that he could work with restrictions and Thunderdome accommodated

13

those restrictions. [Dkt. 43 at 6-16.] For these reasons, the Seventh Circuit's holding in *Byrne* is inapplicable to the facts of this case.

Accordingly, because Mr. Bennett did not provide Thunderdome with sufficient information to determine whether FMLA leave may apply, the Court should deny Mr. Bennett's motion for partial summary judgment and should, instead, enter summary judgment in favor of Thunderdome on his FMLA interference claim.[4] *See Matthys*, 799 F. Supp. 2d at 906.

IV. **CONCLUSION**

For the reasons set forth above and those set forth in Thunderdome's motion for summary judgment, the Court should deny Mr. Bennett's motion for partial summary judgment and enter summary judgment in favor of Thunderdome on all claims asserted by Mr. Bennett in this lawsuit.

Respectfully submitted,

*Erica M. Knear*
Erica M. Knear, Atty. No. 35028-53
Taft Stettinius & Hollister LLP
One Indiana Square, Suite 3500
Indianapolis, IN 46204
(317) 713-3500 – telephone
(317) 713-3699 – fax
eknear@taftlaw.com

Sarah Clay Leyshock, OH Atty. No. 0081695
Taft Stettinius & Hollister LLP
425 Walnut Street, Suite 1800
Cincinnati, OH 45202
(513) 381-2838 – telephone
(513) 381-0205 – fax
sleyshock@taftlaw.com
*Admitted Pro Hac Vice*

*Counsel for Defendant*

---

[4] In addition, for the reasons set forth in Thunderdome's supporting memorandum, the Court should enter summary judgment in favor of Thunderdome on all of Mr. Bennett's claims. [*See* Dkt. 43.]