**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | |
|---|---|
| **RYAN BENNETT,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) **Case No.: 1:21-cv-03027-RLY-MJD** |
| | ) |
| | ) |
| **THUNDERDOME RESTAURANTS,** | ) |
| **LLC,** | ) |
| | ) |
| | ) |
| **Defendants.** | ) |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT**

Plaintiff Ryan Bennett ("Bennett"), by counsel and pursuant to Federal Rule of Civil Procedure 56 and Local Rule 56-1, respectfully submits the following response in opposition to Defendant Thunderdome Restaurants, LLC's ("Thunderdome") motion for summary judgment. As explained more fully *infra*, to the extent that the Court believes that summary judgment is appropriate, the Court should enter summary judgment in Bennett's favor, not in Thunderdome's favor.[1] Regardless, the Court should deny Thunderdome's motion for summary judgment.

**I.**
**SUMMARY OF RESPONSE**

During his deposition, Bennett testified:

Q.     But you declined to allow your physician to modify your restrictions; is that correct?

A.     No.  I just didn't know that there was other options available to me.

---

[1]  Bennett incorporates by reference herein the facts that he asserted and the arguments that he made in support of his motion for partial summary judgment.

Exhibit 2 to Thunderdome's motion for summary judgment at pg. 106:16-20.[2]

Bennett's testimony in response to that question—as well as his other deposition testimony and his affidavit that he filed in support of his motion for partial summary judgment—encapsulates his claim under the Family Medical Leave Act ("FMLA"). 29 U.S.C. § 825 *et seq.*  Thunderdome bragged in its summary judgment brief that its managers were well-versed and experienced in the FMLA, and Thunderdome has offered evidence in support of this assertion. *See* page 5 of Thunderdome's brief in support of its motion for summary judgment and cited evidence. Conversely, Bennett has readily admitted that he had no experience in the FMLA and that he was unaware of his right to take advantage of the benefits available to him under the FMLA. Exhibit 2 at pg. 135:19-20.

However, Thunderdome incorrectly argues that Bennett had a burden to ask specifically for FMLA leave, which he did not do.  That is not the law.  On the contrary, the United States Court of Appeals for the Seventh Circuit has held that an employee does not even "need to be aware of [her] FMLA rights to invoke them." *Lutes v. United Trailers, Inc.*, 950 F.3d 359, 364 (7th Cir. 2020).  Rather, an employee must simply provide "information sufficient to show that [s]he *likely* has an FMLA-qualifying condition." *Burnett v. LFW Inc.*, 472 F.3d 471, 478-79 (7th Cir. 2006)(emphasis in original).  In other words, "the employee's duty is merely to place the employer on notice of a probable basis for FMLA leave." *Aubuchon v. Knauf Fiberglass, GmbH*, 359 F.3d 950, 953 (7th Cir. 2004).  "Once an employee informs [her] employer of [her] probable need for medical leave, the FMLA imposes a duty on the employer to conduct further investigation and

---

[2]  So as to not overburden the Court with additional exhibits, Bennett will simply cite to and will rely upon, in support of his response, Thunderdome's citation to his deposition transcript that Thunderdome filed as Exhibit 2 in support of Thunderdome's motion for summary judgment.

inquiry to determine whether the proposed leave in fact qualifies as FMLA leave." *Burnett*, 472 F.3d at 480.

Nowhere in Thunderdome's brief or in any of the evidence that it submitted in support of its motion for summary judgment does Thunderdome assert that it ever offered FMLA benefits or time-off under the FMLA to Bennett or that it engaged in the interactive process with Bennet that is required by the FMLA. Thunderdome's brief contains no such argument, and Thunderdome has provided no such evidence because no such evidence exists, and therefore, no such argument can be made by Thunderdome. Instead, Thunderdome argues that it is entitled to summary judgment because Bennett did not specifically ask for leave under the FLMA, but Bennett was not required to do so in order to invoke his rights under the FMLA. Therefore, Thunderdome has not demonstrated that it is entitled to judgment as a matter of law.

Bennett respectfully submits that he provided sufficient information to Thunderdome regarding his need for FMLA leave, but Thunderdome never investigated further or offered FMLA to him. As a result, Thunderdome interfered with Bennett's rights under the FMLA. To the extent that the Court disagrees, Bennett respectfully submits that the Court should deny the Parties' cross-motions for summary judgment and should allow a jury to decide the issue.

Likewise, Bennett respectfully submits that a jury should decide his state law *Frampton* claim. *Frampton v. Central Ind. Gas Co.*, 297 N.E.2d 425 (Ind. 1973). A reasonable jury could conclude based upon the facts in this case that Thunderdome retaliated against Bennett because he exercised his right to seek worker's compensation benefits. Therefore, genuine issues of material fact preclude summary judgment in Thunderdome's favor on Bennett's *Frampton* claim.

**II.**

**STATEMENT OF MATERIAL FACTS IN DISPUTE[3]**

During all relevant times, Defendant Thunderdome Restaurants, LLC, owned and operated a restaurant business known as "The Eagle," which is located at 334 Massachusetts Avenue, Indianapolis, Indiana, 46204. Plaintiff's Complaint at ¶ 2; Defendant's Answer at ¶ 2; Bennett's Affidavit at ¶ 3. Bennett worked at the Eagle from July 17, 2018, until Thunderdome terminated him on October 26, 2019. Defendant's Answer at ¶ 9. Bennett's Affidavit at ¶ 4.  Thunderdome has admitted that it is an "employer" as that term is used and defined in the FMLA, in that, Thunderdome employed more than fifty (50) individuals at The Eagle restaurant, and Bennett was a "covered employee" as that term is used and defined in the FMLA, in that, he had worked at The Eagle for more than twelve (12) months, and he had worked in excess of one thousand fifty (1,250) hours per year. Plaintiff's Complaint at ¶ 9; Defendant's Answer at ¶ 9; Bennett's Affidavit at ¶ 3.

Bennett denies that Thunderdome ever provided any negative, written feedback or performance reviews when he worked for Thunderdome at any restaurant owned by it prior to working at The Eagle. Exhibit 2 at pg. 46:4-22; pg. 53:7-16.  Contrary Thunderdome's assertion, Bennett only took smoke breaks during his scheduled break periods or when it had been approved by a Thunderdome manager. *Id*. at pg. 60:2 to pg. 63:9; pg. 212:3-14.  Bennett never left his job without authorization from Thunderdome. *Id*. at pg. 215:19-23.

On August 23, 2019, Bennett sustained a double hernia while lifting a beer keg as part of his job responsibilities at The Eagle. *Id*. at pg. 88:20-24; Bennett Aff. at ¶ 6.  Bennett immediately told the manager on duty—Dayton Neely—that he had injured himself while lifting a beer keg in

---

[3] Bennett incorporates by reference, herein, his factual background and assertions contained within his motion for partial summary judgment as if stated in full here.  Bennett will, for the most part, simply include the statements in disputed in this section of his response rather than a full recitation of the facts.

The Eagle's basement. Exhibit 2 at pg. 91:20-25.  Although he was agitated that Bennett would be leaving work, Mr. Neely instructed to Bennett to go to Concentra to be medically evaluated for his injury. *Id*. at pg. 92:9-19.   The medical providers at Concentra informed Bennett that he had sustained a double hernia and advised Bennett that he should contact and consult with a surgeon to repair his hernia. *Id*. at pg. 93:5-10; pg. 98:23 to pg. 99:5.  Although he did not record the information in the medical records, the doctor at Concentra who examined Bennett advised Bennett that he should take some time off from work due to his hernia. *Id*. at pg. 102:5-9.

Bennett visited the health care professionals at Concentra on at least two more occasions for treatment for his hernia, and Thunderdome was aware of these visits. *Id*. at pgs. 104:3-4; Bennett Aff. at ¶ 12.  During some of these visits, the doctor, again, recommended that Bennett miss time from work due to his hernia. Exhibit 2 at pg. 106:1-24.  Bennett decided not to take time off work because he needed the money and because Thunderdome had never advised him of his rights to do so under the FMLA. *Id*. at pg. 132:13-25 to pg. 133:3.  Bennett disputes that he was ever trained on his rights under the FMLA by Thunderdome. *Id*. at pg. 133:17-18.  Bennett denies that he ever received an employee handbook from Thunderdome. *Id*. at pg. 133:4-6.  Bennett was unaware of any postings at The Eagle notifying him of his FMLA rights. *Id*. at pg. 277:10-16.

In short, Thunderdome never informed, advised, or made Bennett aware of his rights under the FMLA. *Id*. at pg. 135:19-20.  Thunderdome never informed, advised, or made Bennett aware of his rights under the FMLA even though he asked Thunderdome's management for time off due to his injury:

> Q.    Okay.   All right.  Let me take a second here and ask you if you had asked for any time off of work as of August 28th.
>
> A.    Yes.
>
> Q.    Who did you ask for time off?

5

A.     I told Ricky and David.  I was like: I don't know if I can do this job in the way you guys want me to do it because I'm in so much pain.  And this is – it's excruciating.  I said: I'm pissing blood every time I go to the bathroom.  It hurts a lot.  Nobody told me about any –

Q.     And did you ask for time off Mr. Bennett?  Or were you telling them about the injury?

A.     No.  I just made that general statement that I told to you.

Q.     Okay.

A.     And my response back was: If you're in pain, just go to the doctor, then.

Q.     Okay.  And did you stay home from work as a result of your injury?

A.     On the 28th.

Q.     Only on the 28.  Did you ask for any additional time off that you were denied?

A.     After I made the statement, nobody made any other changes to my schedule.

Q.     Okay.  So you did not ask for any time off?

A.     No.  I told them that I don't know that I could perform the job duty, the duties of the job because of my injury.  That's what I told them.  And then there was no other changes to my schedule except for the fact that it was shortened down to 6 hours.

Q.      Mr. Bennett, did you ask for any changes to your schedule?

* * *

Q.     Go ahead, Mr. Bennett.

A.     I said yes, I did.  I told them that I couldn't perform the job and that I needed to have time off for this.  There was no other discussions about it after that.  There was no other shortening of my schedule except for the fact they shortened it down to 6 hours.  And even then I was still working more than 6 hours because there was no manager to relieve me to do my job. And then I would get in trouble for leaving a regular hourly employee there expo'ing, versus a manager.

*Id.* at pg. 128:12 to 131:2.  In fact, rather than advising Bennett of his rights under the FMLA as the law requires, Thunderdome's managers told Bennett that his job was in jeopardy because he had been placed on restricted duty:

> Q.    But you chose to work anyway?
>
> A.    Ricky Tindell.
>
> Q.    Tell me about your conversation with Mr. Tindell.
>
> A.    He made it seem that my job was in jeopardy because of the fact that I was having so many restrictions.
>
> Q.    Did he say that?
>
> A.    No.  He tried to say it in a roundabout way.
>
> Q.    So you were concerned about your job because of your work restrictions?
>
> A.    Yeah; because of my performance because of the work restrictions that were given to me and because of the injury.  I was in a serious amount of pain.  And I couldn't get a surgeon on the phone because the insurance companies took over 15 weeks.  You're just on the first five days.  What about the other 14 and half weeks that it took to get to a surgeon?
>
> Q.    But you understood that you couldn't perform your job well while –
>
> A.    No, I understand that I was in a lot of pain.
>
> Q.    -- you were on these restrictions?
>
> A.    I understood that I was in a lot of pain and I was going through a lot because of this injury.  And they weren't doing anything.  And I hadn't seen the surgeon in five days after being injured.

*Id.* at pg. 126:1 to pg. 127:9.

Bennett was informed by other Thunderdome employees that the managers at Thunderdome were trying to fire him. *Id.* at pg. 185:23 to pg. 187:25.  In fact, Thunderdome deemed Bennett to be "worthless" after he sustained his work-place injury. *Id.*

7

Thunderdome never engaged in the interactive process with Bennett as required by the FMLA. Bennett Aff. at ¶ 9.  Instead, Thunderdome fired Bennett in violation of his federal and state law rights. Bennett's Affidavit at ¶¶ 20 & 21.

## III.
## LEGAL STANDARDS GOVERNING
## MOTIONS FOR SUMMARY JUDGMENT

"Summary judgment is not a substitute for a trial on the merits nor is it a vehicle for resolving factual disputes." *Martin v. Noble County Sheriff's Dep't*, 2021 WL 26310, * 4 (N.D. Ind. Jan. 4, 2021)(citing *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994)). Moreover, the same standard applies when considering cross-motions for summary judgment. *International Bhd. of Elec. Workers, Local 176 v. Balmoral Racing Club, Inc.*, 293 F.3d 402, 404 (7th Cir. 2002).  Federal Rule of Civil Procedure 56(a) provides that summary judgment shall be granted only if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *Ruiz-Rivera v. Moyer*, 70 F.3d 498, 500-01 (7th Cir. 1995).  The moving party has the burden of providing proper documentary evidence to show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).  Once the moving party has met its burden, the opposing party must come forward with specific evidence, not mere allegations or denials of the pleadings, which demonstrates that there is a genuine issue for trial. *Gracia v. Volvo Europa Truck, N.V.*, 112 F.3d 291, 294 (7th Cir. 1997).

## IV.
## THUNDERDOME VIOLATED WITH BENNETT'S RIGHTS UNDER THE FMLA

### A.    Thunderdome interferred with Bennett's rights under the FMLA.

In the instant case, Thunderdome interfered with and violated Bennett's rights under the FMLA by failing to request further information from him and/or his healthcare provider(s) as

8

necessary to confirm that Bennett was entitled to FMLA leave. "The FMLA generally provides eligible employees suffering from a serious medical condition with as many as twelve weeks of unpaid leave during any twelve-month period." *Pagel v. TIN Inc.*, 695 F.3d 622, 626 (7th Cir. 2012). "Employers are prohibited from [ ] interfering with . . . an employee's use or attempted use of FMLA leave." *Id.* In order to succeed on an FMLA interference claim, a plaintiff must establish that: "(1) she was eligible for the FMLA's protections; (2) her employer was covered by the FMLA; (3) she was entitled to take leave under the FMLA; (4) she provided sufficient notice of her intent to take leave; and (5) her employer denied her FMLA benefits to which she was entitled." *Id.* at 627 (quotation marks omitted).

Here, the undisputed evidence demonstrates that Thunderdome interfered with Bennett's right to take leave under the FMLA. Therefore, Bennett—not Thunderdome—is entitled to summary judgment on his FMLA interference claim against Thunderdome.

Thunderdome has admitted that it is an employer for purposes of the FMLA, and Thunderdome has admitted that Bennet was eligible for the FMLA's protections. Plaintiff's Complaint at ¶¶ 9 & 13; Defendant's Answer at ¶¶ 9 & 13. Bennett's Affidavit at ¶¶ 3 & 4. Likewise, there is no question that Thunderdome did not offer any FMLA benefits to Bennett; instead, Thunderdome fired him. *Ziccarelli v. Dart*, 35 F.4th 1079, 1085 (7th Cir. 2022)(holding that "[t]he text of § 2615(a)(1) makes clear that a violation does not require actual denial of FMLA benefits."); Plaintiff's Complaint at ¶¶ 10-12; Bennett's Affidavit at ¶¶ 9, 17-21. Accordingly, Bennett has demonstrated the first, second, and fifth elements necessary to his FMLA interference claim.

Thunderdome argues that it is entitled to summary judgment because Bennett's double hernia was not a "serious health condition" for purposes of the FMLA because he was not

incapacitated for a period lasting more than three consecutive days. But as explained in its motion for partial summary judgment, Bennett's double hernia was a chronic condition as that term is used in the FMLA because Bennett's condition required continuing treatment. Therefore, Bennett's double hernia was a serious health condition for purposes of the FMLA.

Bennett has testified that he visited Concentra Urgent Care approximately eight times in order to seek and receive treatment for his double hernia. Bennett Affidavit at ¶ 12; Exhibit 2 at pg. 104:3-4. Therefore, there can be little doubt that Bennett's double hernia was a chronic condition and, thus, a serious health condition for purposes of the FMLA because he was required to seek multiple treatments for his condition. *Id.* Bennett's medical condition prohibited him from performing his essential job functions for Thunderdome. Bennett Affidavit at ¶ 7. At least one district court has identified a hernia (along with other conditions) as constituting a serious medical condition for purposes of the FMLA, and Bennett urges this Court to reach the same conclusion. *See Lore v. Chase Manhattan Mortg. Corp.*, 2008 WL 11320016, * 4 (N.D. Ga. Nov. 14, 2008) (citing 29 C.F.R. § 825.114(a)); *Soriano v. City of East Chicago*, 2016 WL 1244015, * 1 (N.D. Ind. Mar. 30, 2016)(noting that the defendant did not deny that a hernia was a serious condition for purposes of the FMLA).

Furthermore, Bennett had to seek medical treatment on several occasions for his hernia. Bennet Aff. at ¶ 12. Because he had to seek medical care several times that ultimately resulted in a surgical repair of his double hernia, Bennett's medical condition constitutes a serious medical condition for purposes of the FMLA. That was the result reached by the United States District Court for the Central District of Illinois under similar facts in *Carlson v. Sexton Ford Sales, Inc.*, 2017 WL 4273618 (C.D. Ill. Sept. 26, 2017), where the plaintiff suffered from (among other ailments) a hernia. *Id.* at * 1. In *Carlson*, the Central District of Illinois explained:

However, as Carlson observes, Sexton misconstrues regulatory guidance defining one kind of "continuing treatment" as a requirement for all kinds of "continuing treatment." 29 C.F.R. § 825.115 states that a serious health condition involving continuing treatment by a health care provider includes one or more of five different circumstances: "a period of incapacity of more than three consecutive, full calendar days," *id.* § 825.115(a); "[a]ny period of incapacity due to pregnancy," *id.*§ 825.115(b); "[a]ny period of incapacity or treatment for ... incapacity due to a chronic serious health condition," *id.* § 825.115(c); a period of incapacity resulting from a long-term condition for which treatment may be ineffective, *id.* § 825.115(d); or a period of absence resulting from multiple treatments, *id.* § 825.115(e). Since any one of the five listed conditions is sufficient to qualify as a serious health condition involving treatment by a health care provider, no single condition is necessary. *Phillips v. Quebecor World RAI, Inc.*, 450 F.3d 308, 310 (7th Cir. 2006), upon which Sexton relies, is not to the contrary. *See id.* (stating that an older version of the regulations provided that a three-day period of incapacity satisfied the requirement).

As Carlson makes clear, he relies not on subsection (a), which requires a period of incapacity for three consecutive days, but on subsection (c), which requires a chronic condition, and makes no mention of three consecutive days of incapacity. The regulations define a chronic condition as one that:

> (1) Requires periodic visits (defined as at least twice a year) for treatment by a health care provider, or by a nurse under direct supervision of a health care provider;
>
> (2) Continues over an extended period of time (including recurring episodes of a single underlying condition); and
> (3) May cause episodic rather than a continuing period of incapacity (e.g., asthma, diabetes, epilepsy, etc.).

29 C.F.R. § 825.115(c). Carlson's uncontradicted account of his PTSD fits this description well. He made several visits to the VA for treatment of his PTSD, which did not abate and required treatment during the entire time relevant to this lawsuit, and was at least sometimes episodic in nature (panic attacks). *See Lee v. City of Elkhart, Ind.*, 602 Fed. Appx. 335, 339 (7th Cir. 2015)("PTSD . . . can be a 'serious health condition' qualifying a person for FMLA leave . . . ."). A jury could find that Carlson's PTSD or his other ailments were serious health conditions under 29 U.S.C. § 2612(a)(1)(D).

*Id.* at * 4 (C.D. Ill. Sept. 26, 2017). Similarly, a reasonable jury could conduct that Bennett's

double hernia constituted a serious health condition based upon his repeated need for medical

treatment, especially given the fact that the Concentra doctors told Bennett that he should take time off from work.

Thunderdome's main contention in support of its motion for summary judgment appears to be its mistaken belief that Bennett was not entitled to FMLA benefits because he did not specifically ask for them. Thunderdome's argument is contrary to law. The evidence cited in his motion for partial summary judgment and the facts and evidence provided *supra* demonstrate that Bennett provided sufficient information to Thunderdome to place it on notice or constructive notice of his need for FMLA leave, and that was all that Bennett was required to do to be entitled to FMLA benefits.

The United States Court of Appeals for the Seventh Circuit has noted that this notice requirement is not onerous; the element is satisfied when an employee provides "information sufficient to show that [s]he *likely* has an FMLA-qualifying condition." *Burnett*, 472 F.3d at 478-79 (emphasis in original). No finding of ill intent is required. *Id*. at 477. Stated differently, "the employee's duty is merely to place the employer on notice of a probable basis for FMLA leave." *Aubuchon*, 359 F.3d at 953. "Once an employee informs [her] employer of [her] probable need for medical leave, the FMLA imposes a duty on the employer to conduct further investigation and inquiry to determine whether the proposed leave in fact qualifies as FMLA leave." *Burnett*, 472 F.3d at 480. As one district court has opined: "Johnson [the employee] was not obligated to provide Gerresheimer [the employer] with information conclusively demonstrating that she required FMLA leave; her notice only needed to establish a *probable* basis for FMLA leave by alerting Gerresheimer 'to the seriousness of the health condition.' *See Stevenson v. Hyre Elec. Co.*, 505 F.3d 720, 725 (7th Cir. 2007); *Aubuchon*, 359 F.3d at 953. If Johnson's notice established this probable basis, it was then Gerresheimer's duty 'to conduct further investigation and inquiry to

determine whether the proposed leave *in fact* qualifies as FMLA leave.' *Burnett*, 472 F.3d at 480 (emphasis added)." *Johnson v. Gerresheimer Glass, Inc.*, 2022 WL 117768, * 7 (N.D. Ill. Jan. 12, 2022).

Here, Bennett provided more than enough information to Thunderdome to place it on actual notice or constructive notice of his need for FMLA benefits, thereby triggering Thunderdome's obligations and duties under the FMLA to conduct further investigation and inquiry in order to determine whether Bennett should have been offered benefits under the FMLA, including leave under the FMLA. *Id.* "When an employee seeks leave for the first time for a FMLA-qualifying reason, the employee need not expressly assert rights under the FMLA or even mention the FMLA." 29 C.F.R. § 825.303(b). Bennett was injured on the job and needed to seek medical treatment for his injuries on multiple occasions. Bennett informed Thunderdome of his injury, and Thunderdome admitted that it knew that Bennett had injured himself on the job and that he was in pain.

Nevertheless, Thunderdome never spoke to Bennet about his rights under the FMLA, nor did Thunderdome ever offer any training to Bennett about his rights under the FMLA. Indeed, Thunderdome does not deny that they failed to engage in the FMLA interactive process even though its managers were experienced and knowledgeable about the FMLA and Thunderdome's duties and obligations under the FMLA.

Even if the Court were to find that the testimony provided by Bennett regarding the notice provided to Thunderdome is insufficient for purposes of carrying his burden on summary judgment, the cited evidence, at a minimum, creates a question of fact sufficient that precludes summary judgment in Thunderdome's favor. Thunderdome has admitted that Bennett told Thunderdome that he was suffering from a hernia and that he needed medical attention.

13

Defendant's Answer at ¶ 7. Thunderdome's admission on this point should resolve any dispute of fact regarding the notice requirement to Bennett's FMLA interference claim.

Despite this knowledge of Bennett's condition, the origin of his condition, and his need for time off as a result of his serious medical condition, Thunderdome remained silent as to Bennett's rights under the FMLA, and in so doing, Thunderdome violated or interfered with Bennett's rights under the FMLA. Other federal courts have reached this conclusion on fewer facts that would constitute notice for purposes of a FMLA interference claim. *E.g.*, *Preddie v. Bartholomew Consol. Sch. Corp.*, 799 F.3d 806, 817 (7th Cir. 2015)(finding that mentioning the plaintiff's son's anemia and providing an email regarding the plaintiff's diabetes was sufficient to place the employer on notice under the FMLA); *Byrne v. Avon Prods., Inc.,* 328 F.3d 379, 380 (7th Cir. 2003)(holding that a drastic change in the behavior of a model employee could suffice as proper notice of a serious medical condition under the FMLA); *Gibson v. Indiana State Personnel Dep't*, 2020 WL 1956120, * 3 (S.D. Ind. Apr. 21, 2020)(citing *Nicholson v. Pulte Homes Corp.*, 690 F.3d 819, 826 (7th Cir. 2012)and holding that "[a] general request for time off for FMLA-qualifying reasons is enough.").

As he did in his motion for partial summary judgment, Bennett cites to and relies upon the Opinion from United States District Judge Tonya Walton-Pratt in *White v. Valeo Lighting Sys. N. Am. Inc.*, 2021 WL 5447075 (S.D. Ind. Nov. 22, 2021). In *White*, Judge Walton-Pratt denied the employer/defendant's motion for summary judgment on the plaintiff/employee's FMLA interference claims. *Id*. at * 11-12. In denying the defendant/employer's motion for summary judgment on the plaintiff/employee's FLMA interference claim, Judge Walton-Pratt, relying on the Seventh Circuit's opinion in *Lutes*, 950 F.3d at 366, explained that an employee does not need to follow an employer's internal notice regulations in order to constitute sufficient notice under the FMLA. *White*, 2021 WL 5447075, at * 12. Instead, Judge Walton-Pratt found that, because

the defendant/employer had received several doctor's notes from the plaintiff/employee in a little over a month's time, summary judgment was not appropriate on the issue of notice in the defendant/employer's favor because a reasonable jury could conclude that the plaintiff/employee had provided sufficient notice under the FMLA to trigger the defendant/employer's duties to investigate the plaintiff/employee's need for leave under the FMLA. *Id*.

Here, there is no doubt that Bennett satisfied his obligation to place Thunderdome on notice of his need for FMLA leave or time off. Thunderdome knew that Bennett had gone to Concentra Urgent Care several times for his hernia, and Thunderdome knew that Bennett was in pain. Bennett Affidavit at ¶¶ 11 & 12. Bennett testified during his deposition that he told Thunderdome that he was in pain and that he could not perform his job. Exhibit 2 at pg. 184:2-24. This information was sufficient to place Thunderdome on notice that it needed to engage in the interactive process under the FMLA with Bennett when he began to miss work and when he could not perform the essential duties of his job due to his double hernia.

But instead of complying with its obligations under the FMLA, Thunderdome became irritated when he had to go to Concentra. *Id*. at pg. 92:9-15. Thunderdome told Bennett that he job was in jeopardy due to his work restrictions. *Id*. at pg. 126: 1-22. Thunderdome characterized him as worthless. *Id*. at pg. 182:24-25. And, Thunderdome fired Bennett on October 26, 2019. Bennett Aff. at ¶ 9. In so doing, Thunderdome violated and interfered with Bennett's rights under the FMLA. Therefore, the Court should, at a minimum, deny the Parties' cross-motions for summary judgment and should allow Bennett's FMLA interference claim to proceed to trial.

**B.    Thunderdome retaliated against Bennett in violation of his rights under the FMLA.**

Similarly, the Court should allow Bennett's FMLA retaliation claim to proceed to a jury trial. "Retaliation claims under the FMLA . . . require three familiar elements: (1) the employee

engaged in statutorily protected activity; (2) the employer took adverse action against the employee; and (3) the protected activity caused the adverse action." *Freelain v. Village of Oak Park*, 888 F.3d 895, 901 (7th Cir. 2018). To succeed on his retaliation claim, Bennett does not need to prove that "retaliation was the *only* reason for h[is] termination; []he may establish an FMLA retaliation claim by 'showing that the protected conduct was a substantial or motivating factor in the employer's decision.'" *Lewis v. School Dist. # 70*, 523 F.3d 730, 741–42 (7th Cir. 2008)(quoting *Culver v. Gorman & Co.*, 416 F.3d 540, 545 (7th Cir. 2005)). To make this showing, a plaintiff can rely on direct or circumstantial evidence, including "suspicious timing" and "ambiguous statements from which a retaliatory intent can be drawn." *Pagel*, 695 F.3d at 631.

In addition to the evidence and the facts provided that demonstrate that Bennet (and not Thunderdome) is entitled to summary judgment on Bennett's FMLA interference claim, Bennett respectfully submits that questions of fact preclude summary judgment on his FMLA retaliation claim. *First*, Bennett denied during his deposition that he was reprimanded by Thunderdome at any of its restaurants before coming to work at The Eagle. Exhibit 2 at pg. 46:4-22; pg. 53:7-16.

*Second*, the reprimands that Bennett received at The Eagle were pretextual. Bennett testified that he only took smoke breaks during his scheduled break periods or when it had been approved by a Thunderdome manager. *Id*. at pg. 60:2 to pg. 63:9; pg. 212:3-14. Bennett never left his job without authorization from Thunderdome. *Id*. at pg. 215:19-23. And, Bennett received discipline after he had left for home and had been terminated. *Id*. at pg. 219:22 to pg. 210:8. In fact, Bennett testified that he was instructed to go home by Thunderdome, and then, he received discipline for going home. *Id*. at 215:19-23. Bennett further testified that, for one of the discipline notices that he received, he was late to work due to the pain medication that he was taking as a result of the hernia that he sustained at Thunderdome and that Thunderdome was aware of this

16

situation. *Id.* at pg. 183:12 to pg. 184:13.  Accordingly, questions of fact preclude summary judgment in Thunderdome's favor on Bennett's FMLA retaliation claim against it.

## V.
## QUESTIONS OF FACT PRECLUDE SUMMARY JUDGMENT IN THUNDERDOME'S FAVOR ON BENNETT'S *FRAMPTON* CLAIM

Finally, questions of fact preclude summary judgment in Thunderdome's favor on Bennett's state law *Frampton* claim against it.  Bennett has invoked this Court's supplemental jurisdiction under 28 U.S.C. § 1367(c) and has asserted a state law claim that Thunderdome retaliated against him because he filed a worker's compensation claim under Indiana law.  Such a claim is referred to in Indiana as a *Frampton* claim. *Frampton v. Central Ind. Gas Co.*, 297 N.E.2d 425 (Ind. 1973).

As this Court has previously opined:

> Plaintiff's common law retaliatory discharge claim is commonly called a "Frampton" claim. *Frampton v. Cent. Ind. Gas Co.*, 297 N.E.2d 425 (Ind. 1973). In the case from which it derives its name, the Indiana Supreme Court held that an employer may not discharge an employee solely in retaliation for filing of worker's compensation claim. *Purdy v. Wright Tree Serv., Inc.*, 835 N.E.2d 209, 212 (Ind. Ct. App. 2005).  To survive summary judgment on a *Frampton* claim, "an employee must show more than a filing of a worker's compensation claim and the discharge itself." *Powdertech, Inc. v. Joganic*, 776 N.E.2d 1251, 1262 (Ind. Ct. App. 2002).  Instead, an employee must present evidence which raises an "inference of causation between the filing of worker's compensation claim and the termination, such as proximity in time or evidence that the employer's asserted lawful reason for discharge is pretext." *Id.*

*Gaines v. Anchor Glass Container Corp.*, 2020 WL 6274817, * 9 (S.D. Ind. Oct. 26, 2020), *appeal dismissed*, No. 20-3268, 2021 WL 2103608 (7th Cir. Feb. 22, 2021).  Accordingly, in order "[t]o maintain a *Frampton* claim, [plaintiff] must establish a causal connection between his termination and the filing of his workers' compensation claim." *Hudson v. Wal-Mart Stores, Inc.*, 412 F.3d 781, 785 (7th Cir. 2005)(addressing Indiana law).  "A *prima facie* case . . . consists of three elements: (1) he filed a workers' compensation claim; (2) he was terminated from his employment;

and (3) there is a causal connection between the filing of his workers' compensation claim and his termination. *Sprinkles v. WSG Mfg., LLC*, 2017 WL 1197289, * 10 (S.D. Ind. Mar. 31, 2017) (citing *Mullins v. Lobdell Emery, Inc.*, 2002 WL 459040, * 4 (S.D. Ind. March 21, 2002)).

Here, there is no dispute that Bennett filed a claim for worker's compensation, and there is no dispute that Thunderdome fired him. The only question is whether there is a causal connection between Bennett's filing of his worker's compensation claim and Thunderdome terminated him. Bennett respectfully submits that sufficient evidence exists that would preclude the Court from entering summary judgment in Thunderdome's favor on his *Frampton* claim. In support of his argument, Bennett cites two pieces of evidence.

*First*, Bennett was terminated only after he started to complain about not having the surgery that he needed due to the worker's compensation insurance slow-walking the approval process and only after Bennett threatened legal action in support of his worker's compensation claim. Exhibit 2 at pg. 200:1 to pg. 205:19. *Second*, Thunderdome fired Bennett the day after he had complained to Thunderdome's management about filing his worker's compensation claim, specifically the fact that Thunderdome's worker's compensation was not wanting to approve his necessary surgery:

> Q.    What about David? When you had a conversation with David about your status of your workers' comp claim, how did David respond?
>
> A.    He didn't seem too concerned. He kind of blew it off a little bit. He -- I guess I would say he referred to Ricky.
>
> Q.    What does that – I'm not sure I understand.
>
> A.    He didn't really, he didn't really do anything. He didn't really show any type of concern, emotion about it. After I told him, I think he was just more going to go with whatever Ricky said. I think he just understood that he was going to pass a message along.
>
> Q.    Okay. And you're saying this is the day before you were terminated –
>
> A.    Yes.

Q.    -- from Thunderdome?  And you were terminated on the 26th; is that correct?

A.    Yes.

*Id*. at pg. 207:20 to pg. 208:18.

Thus, contrary to Thunderdome's argument, no intervening actions occurred that would negate causation.  Bennett complained one day in support of his worker's compensation claim, and Thunderdome fired him the very next day.  As a result, genuine issues of material fact exist that preclude the Court from entering summary judgment in Thunderdome's favor on Bennett's *Frampton* claim.[4]

## VI.
## CONCLUSION

In short, the undisputed evidence shows that Thunderdome interfered with Bennett's rights under the FMLA and that Thunderdome retaliated against Bennett in violation of his federal and state law rights.  Thunderdome knew that Bennett had sustained a double hernia as a result of performing the essential duties of his job as a manager at one of Thunderdome's restaurants; Thunderdome was aware that Bennett was in pain as a result of suffering a hernia while at work; Thunderdome knew that Bennett had sought medical care for his double hernia; and Thunderdome was aware that Bennett was missing work as a result of his serious medical condition.

Nevertheless, Thunderdome never engaged in the interactive process with Bennett that the FMLA requires.  Thunderdome never told Bennett of his rights under the FMLA to receive time

---

[4]   To the extent that the Court denies Bennett's motion for summary judgment and grants Thunderdome's motion, in full, on Bennett's FMLA claim, Bennett respectfully submit that the Court should relinquish jurisdiction over Bennett's remaining *Frampton* claim because federal jurisdiction would no longer exist in this case. *Jaimes v. Cook County*, 2022 WL 2806462, * 4 (7th Cir. July 18, 2022)(noting that "in most cases the district court should presumptively relinquish jurisdiction over the state law claims when the accompanying federal claims drop out before trial . . . .").

19

off.  Thunderdome never provided any training to Bennett on his rights under the FMLA.  Instead, Thunderdome fired Bennett.

The undisputed fact show that Thunderdome violated Bennett's rights under the FMLA.  Bennett has pointed to undisputed fact, supported by evidence, with which to show that Thunderdome interfered with his rights under the FMLA.  And, Bennett has demonstrated that he is entitled to judgment as a matter of law on his FMLA interference claim.  Bennett has also shown that questions of fact preclude summary judgment in Thunderdome's favor on his FMLA retaliation claim and *Frampton* claim.

WHEREFORE, Plaintiff Ryan Bennett, by counsel, respectfully moves the Court for partial summary judgment on his Complaint against Defendant Thunderdome Restaurants, LLC; asks the Court to enter judgment in his favor and against Defendant on his claim for interference under the Family Medical Leave Act; asks the Court to deny Thunderdome's motion for summary judgment *in toto*; asks the Court to set this matter for trial on the amount of damages owed to Plaintiff by Defendant for interfering with his rights under the FMLA; asks the Court to set trial on Plaintiff's remaining claims against Defendant; and asks for all other just and proper relief.


Respectfully submitted,

/s/ Mark R. Waterfill

Mark R. Waterfill, #10935-49
Mark R. Waterfill, Attorney at Law, P.C.
2230 Stafford Road, STE 115, PMB 379
Plainfield, IN 46168
(317) 501-6060
mark@waterfilllaw.com

## **CERTIFICATE OF SERVICE**

I certify that a true, exact, and authentic copy of the foregoing has been served upon all counsel of record by way of electronic service the dame day as filing.


/s/ *Mark R. Waterfill*