UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| RYAN BENNETT, | ) |
| Plaintiff, | ) ) ) |
| v. | ) CAUSE NO. 1:21-cv-03027-RLY-MJD |
| THUNDERDOME RESTAURANTS, LLC, | ) ) ) |
| Defendant. | ) |

**DEFENDANT'S REPLY IN SUPPORT OF**
**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, defendant Thunderdome Restaurants, LLC ("Thunderdome") submits the following reply in support of its motion for summary judgment on all of plaintiff Ryan Bennett's claims.[1]

I. **INTRODUCTION**

The crux of Mr. Bennett's lawsuit is that Thunderdome terminated his employment as a result of retaliatory animus. What Mr. Bennett's response lacks, however, is any evidence that undermines or rebuts Thunderdome's legitimate, non-retaliatory reasons for terminating his employment. Rather, the undisputed facts show that Thunderdome terminated Mr. Bennett's employment based solely on his history of performance issues and failure to take accountability and make the appropriate changes. Despite these legitimate reasons, Mr. Bennett relies on hearsay

---

[1] Pursuant to the Court's Order [Dkt. 39], on October 31, 2022, Thunderdome filed a motion for summary judgment on all of Mr. Bennett's claims [Dkt. 42-43] and Mr. Bennett filed a motion for partial summary judgment [Dkt. 40-41]. Pursuant to the Court's Local Rule 56-1(b), "[a] party opposing a summary judgment motion must, within 28 days after the movant serves the motion, file and serve a response brief and any evidence (that is not already in the record) that the party relies on to oppose the motion." Accordingly, both parties had until November 28, 2022 to file a response opposing the other party's summary judgment motion. Local Rule 56-1(b). Thunderdome complied with the local rule and filed its response on November 28, 2022. [Dkt. 44.] Mr. Bennett, however, filed his response brief one day after the deadline, on November 29, 2022, without a request for extension or mention of the missed deadline. [Dkt. 45.] Although Mr. Bennett missed the deadline to respond, Thunderdome is confident in its position that a decision on the merits, not a technicality, is warranted.

and his own unsupported speculation, and mischaracterizes and omits key facts in an effort to show retaliatory animus where none exists. Mr. Bennett's efforts fall short as none of the "evidence" he points to satisfies his burden to show that his need for Family and Medical Leave Act ("FMLA") leave and/or his worker's compensation claim were the *cause* of his termination and that Thunderdome's reasons for termination were pretextual. Finally, Mr. Bennett's FMLA interference claim fails because the undisputed, admissible evidence establishes that he did not have a serious health condition and that he failed to provide Thunderdome with notice that he needed to take time off for his workplace injury.

For these reasons, the Court should deny Mr. Bennett's motion for partial summary judgment and the enter summary judgment in favor of Thunderdome on all of Mr. Bennett's claims.

## II. THERE ARE NO GENUINE ISSUES OF MATERIAL FACT

Mr. Bennett attempts to create genuine issues of material fact by relying on misrepresentations of undisputed testimony, speculation, hearsay, and self-serving conclusions unsupported by admissible facts. However, as set forth in Thunderdome's memorandum in support of its motion for summary judgment [Dkt. 43 at 3-16] ("Thunderdome's original memorandum") and in its response in opposition to Mr. Bennett's motion for partial summary judgment [Dkt. 44 at 2-5] ("Thunderdome's response"), the undisputed properly admissible facts in this case support summary judgment in favor of Thunderdome on all claims.

In this section, Thunderdome does not restate all undisputed facts set forth in its original memorandum or response and, instead, responds only to those facts Mr. Bennett presents as disputed.

2

### A. Mr. Bennett admitted that he had received oral counseling for his performance prior to his August 23, 2019 workplace injury.

It is undisputed that, during his employment with Thunderdome, Mr. Bennett took unauthorized smoke breaks in violation of Thunderdome's Smoking Policy and that Thunderdome management had orally counseled him as a result of the violation. [Dkt. 42-3, Bennett Dep. 60:3-10, 61:10-14; *see also* Dkt. 42-7, Martin Dep. 24:4-12 (testifying that he orally counseled Mr. Bennett multiple times before the October 9, 2019 write up); Dkt. 42-5, Tindell Dep. 21:15-24, 36:14-24; Dkt. 42-8, Tindell Decl. at ¶¶ 5-8.] In Mr. Bennett's response in opposition to Thunderdome's motion for summary judgment ("Mr. Bennett's response"), Mr. Bennett attempts to create a genuine issue of material fact by denying that he received any counseling or reprimand for his performance prior to his August 23, 2019 workplace injury. [Dkt. 45 at 4, 16.] Specifically, he argues that Thunderdome "never provided any negative, written feedback or performance reviews when he worked for Thunderdome at any restaurant owned by it prior to working at The Eagle" [Dkt. 45 at 4; *see also* Dkt. 45 at 16], and that he "only took smoke breaks during his scheduled break periods or when it had been approved by a Thunderdome manager" [Dkt. 45 at 4]. Mr. Bennett, however, completely ignores his admission that he had smoked during unauthorized breaks in violation of the Smoking Policy and that Thunderdome management had counseled him about that violation. [Dkt. 42-3, Bennett Dep. 60:3-10, 61:10-14.] Notably, during his deposition, Mr. Bennett testified:

> Q: Did [Thunderdome management] ever tell you that you took a smoke break at the time when you weren't permitted to take a smoke break?
> A: Yes.
> Q: And did you, in fact, take a smoke break at that time?
> A: When they told me to; yes. That's why they told me not to do that.
> ….
> Q: So if Thunderdome management testifies that they counseled you on taking smoke breaks when you were not permitted, are they going to be telling a life.
> A: No.

3

[Dkt. 42-3, Bennett Dep. 60:3-10, 61:10-14.] Mr. Bennett's own testimony, as well as the testimony of Thunderdome management, establishes that Thunderdome did orally counsel Mr. Bennett regarding his performance for violation of its Smoking Policy prior to his August 23, 2019 workplace injury. [Dkt. 42-3, Bennett Dep. 60:3-10, 61:10-14; *see also* Dkt. 42-7, Martin Dep. 24:4-12; Dkt. 42-5, Tindell Dep. 21:15-24, 36:14-24; Dkt. 42-8, Tindell Decl. at ¶¶ 5-8; Dkt. 43 at 6-12.] Thus, Mr. Bennett's flat denial that he ever received any negative feedback about his performance until *after* his August 23, 2019 workplace injury is false and unsupported by his own testimony and that of Thunderdome management.

> **B. The undisputed, admissible evidence shows that Mr. Bennett was able to work with restrictions and did not need time off work for his workplace injury.**

It is undisputed that Mr. Bennett's medical records from August 23, 2019 through October 26, 2019 show that he was able to work with restrictions and do not indicate that he ever needed time off work other than to seek medical attention. [*See generally* Dkt. 42-18; Dkt. 42-20; Dkt. 42-21; Dkt. 42-22; *see also* Dkt. 43 at 12-16; Dkt. 45 at 5 (Mr. Bennett admitting in his response that the medical records do not include any reference from the doctor that Mr. Bennett needed time off for his workplace injury).] Despite these undisputed facts, in his response, Mr. Bennett attempts to create a genuine issue of material fact by alleging that his doctor at Concentra advised him that he should "take some time off from work due to his hernia." [Dkt. 45 at 5.] Mr. Bennett's doctor's alleged statement should not be considered for two reasons.

First, Mr. Bennett's doctor's alleged statement is inadmissible hearsay. Fed. R. Evid. 801(c). It is a statement made by a third party, out of court, and is being offered for its truth (i.e., to support Mr. Bennett's argument that he needed time off for his workplace injury and Thunderdome failed to provide him with FMLA leave). Accordingly, the statement is inadmissible

4

and should not be considered. Second, even if the statement were admissible (which it is not), Mr. Bennett fails to allege, and cannot allege, that he ever informed anyone at Thunderdome that his doctor informed him that he needed time off for his injury. Rather, the undisputed evidence shows that, from August 23, 2019 through October 26, 2019, Mr. Bennett sought medical treatment on nine occasions and was released to work with restrictions on each of those occasions. [*See generally* Dkt. 42-18; Dkt. 42-20; Dkt. 42-21; Dkt. 42-22; *see also* Dkt. 43 at 12-16; Dkt. 45 at 5.] Thunderdome followed those restrictions and Mr. Bennett continued to work. [Dkt. 43 at 12-16.] The only time that Mr. Bennett requested off work for was for his follow-up medical care, and Thunderdome accommodated those requests. [Dkt. 42-8, Tindell Decl. at ¶ 9; Dkt. 42-3, Bennett Dep. 128:12-131:2, 279:22-24, 131:3-16; Dkt. 42-5, Tindell Dep. 43:4-7, 80:25-81:10.] Indeed, Mr. Bennett testified that he did not request time off because he was medically injured as he left "that up to the doctors" to determine if time off was appropriate. [Dkt. 42-3, Bennett Dep. 131:3-16.] Accordingly, Mr. Bennett's allegation that his doctor told him to take time off work due to his workplace injury is inadmissible as hearsay and is against the undisputed, admissible evidence.

### C. Thunderdome management never told Mr. Bennett that his job was in jeopardy if he continued to work.

In his response, Mr. Bennett falsely alleges that Thunderdome management "told [him] that his job was in jeopardy because he had been placed on restricted duty." [Dkt. 45 at 7.] In support of his allegation, Mr. Bennett mischaracterizes his own testimony and cites to inadmissible hearsay. First, Mr. Bennett never testified that anyone in Thunderdome management "told" him that his job was in jeopardy. Rather, Mr. Bennett's own testimony was that he *felt* like his "job was in jeopardy" because of his workplace injury, but he admitted that no one in Thunderdome management ever "told" him that. [Dkt. 42-3, Bennett Dep. 125:22-126:22 (testifying that Mr. Tindell did not tell him his job was in jeopardy, but that Mr. Tindell "made it seem" that way "in

5

a roundabout way").] Second, to bolster his allegation that Thunderdome management was trying to fire him because of his workplace injury, Mr. Bennett attempts to rely on inadmissible hearsay. Specifically, in his response, Mr. Bennett alleges that other Thunderdome employees informed him that "the managers at Thunderdome were trying to fire him," and that those other Thunderdome employees also told him that Thunderdome management "deemed [him] to be worthless after he sustained his workplace injury." [Dkt. 45 at 7.] These two statements, however, are inadmissible because they are hearsay. Fed. R. Evid. 801(c). These two alleged statements were made by third parties, out of court, and are being offered for their truth (i.e., to support Mr. Bennett's argument that Thunderdome terminated his employment because of his workplace injury in violation of the FMLA and worker's compensation law). Fed. R. Evid. 801(c). As a result, Mr. Bennett's false factual assertion that Thunderdome management was trying to fire him because of his workplace injury is unsupported by admissible evidence and, thus, is not properly before the Court and should not be considered.

III. **ARGUMENT**

    **A. The Undisputed Evidence Supports Summary Judgment in Favor of Thunderdome on Mr. Bennett's FMLA Interference Claim.**

As set forth in detail in Thunderdome's original memorandum [Dkt. 43 at 12-16, 17-25] and in its response [Dkt. 44 at 5-14], the undisputed facts in this case support the denial of Mr. Bennett's motion for partial summary judgment and the entry of summary judgment in favor of Thunderdome on all of Mr. Bennett's claims, including his claim of FMLA interference. In his response, Mr. Bennett provides little argument that has not already been fully addressed by Thunderdome in its original memorandum and response. [Dkt. 43 at 12-16, 17-25; Dkt. 44 at 5-14]. Rather, Mr. Bennett's FMLA intereference claim still fails for two reasons.

First, Mr. Bennett cannot establish that he had a chronic condition because he completely recovered from his workplace injury in a short period of time. [Dkt. 43 at 12-23; Dkt. 44 at 5-8.] In his response, Mr. Bennett again ignores the requirement that a chronic condition has to continue over an extended period of time. [Dkt. 45 at 10-11.] Rather, he argues that Mr. Bennett's nine medical appointments, by themselves, establish that he had a chronic condition. [Dkt. 45 at 10-11.] Mr. Bennett relies on one easily distinguishable case to bolster his argument – *Carlson v. Sexton Ford Sales, Inc.*, No. 4:15–cv–04227–SLD–JEH, 2017 WL 4273618, at *4 (C.D. Ill. Sept. 26, 2017). In *Carlson*, the court denied summary judgment for employer, determining that a jury could find plaintiff's post-traumatic stress disorder ("PTSD") was a serious health condition under the FMLA where "[h]e made several visits to the VA for treatment of his PTSD, *which did not abate* and required treatment during the entire time relevant to this lawsuit, and was at least sometimes episodic in nature (panic attacks)." *Id.* (emphasis added). Notably, the plaintiff in *Carlson* had suffered from PTSD for at least seven years (beginning in 2010) and the court noted that the condition had "not abate[d]" even at the time of the court's decision in 2017. *Id.* Unlike the seven-year condition in *Carlson*, however, Mr. Bennett fully recovered from his injury in a mere two and a half months. Accordingly, Mr. Bennett has failed to produce any argument that has not been fully addressed and dismantled for the reasons explained in detail in Thunderdome's original memorandum and response. Put simply, Mr. Bennett's temporary groin injury, from which he completely recovered, fails to constitute a chronic condition. [*See* Dkt. 43 at 12-16, 17-25; Dkt. 44 at 5-14].

Second, Mr. Bennett's FMLA interference claim fails because he did not provide Thunderdome with notice of his intent to take FMLA leave. [Dkt. 43 at 23-24; Dkt. 44 at 8-14.] Notably, Mr. Bennett never requested time off and his medical records indicated that he did not

7

need time off and could work. Mr. Bennett attempts to create a genuine issue of material fact by alleging that his doctor told him to take time off because of his workplace injury. [Dkt. 45 at 12.] As discussed in detail above in Section II.B. and II.C., however, Mr. Bennett's allegation that his doctor told him to take time off work due to his workplace injury is inadmissible as hearsay and is against the undisputed admissible evidence. In addition, Mr. Bennett fails to allege that, even if the doctor told him to take time off, he informed Thunderdome that the doctor had told him to take time off. [Dkt. 45 at 12.] Rather, the undisputed evidence shows that Mr. Bennett never requested time off because of his injury [Dkt. 42-3, Bennett Dep. 128:12-131:2 (testifying that, on August 28, 2019, he made a "general statement" to Mr. Tindell and Mr. Downs that he didn't know if he was able to do the job because he was in pain), 279:22-24 (testifying that he never requested FMLA leave from Thunderdome), 131:3-16 (testifying that it was up to the medical providers to decide if he was able to perform his job with or without restrictions)] and his medical records show that he was able to work with restrictions from August 23, 2019 through October 26, 2019 and not that he needed any time off [*See* Dkt. 43 at 12-16; Dkt. 44 at 8-14; *see generally* Dkt. 42-18 at 20-21]. Mr. Bennett in his response has set forth no admissible evidence or supporting case law that counters the undisputed, admissible medical records or legal arguments set forth in Thunderdome's original memorandum or response. [Dkt. 43 at 12-16, 17-25; Dkt. 44 at 5-14].

Because Mr. Bennett cannot establish that he had a serious health condition or that he provided notice of his intent to take FMLA leave, Mr. Bennett's FMLA interference claim fails as a matter of law. As a result, the Court should deny Mr. Bennett's motion for partial summary judgment and should, instead, enter summary judgment in favor of Thunderdome on his FMLA interference claim.

### B. Nothing in Mr. Bennett's Response Precludes Summary Judgment in Favor of Thunderdome on His Retaliation Claims.

As explained in Thunderdome's original memorandum, Thunderdome's decision to terminate Mr. Bennett's employment was based solely on his history of repeated performance issues and failure to take accountability for those failures. [Dkt. 43 at 6-12.] Mr. Bennett has no evidence to support that his termination was a cover-up for retaliation for either his alleged need for FMLA leave or his worker's compensation claim. *See Brooks v. Avancez*, 39 F.4th 424, 435 (7th Cir. 2022) ("[W]e do not evaluate whether the employer's proffered justification was accurate or even whether it was unfair.") (citation omitted).

#### 1. Mr. Bennett Cannot Show Pretext for FMLA Retaliation.

In his response, Mr. Bennett attempts to establish his FMLA retaliation claim under only the direct method of proof. [Dkt. 45 at 15-16.] This is most likely because he cannot present the evidence needed to establish his claim under the indirect method of proof in that he was not meeting Thunderdome's legitimate expectations and he cannot show that he was treated less favorably that similarly situated employees who did not engage in statutorily protected activity. [*See* Dkt. 43 at 27-31.] Since Mr. Bennett offers no direct evidence of FMLA retaliation, he must satisfy the direct method with circumstantial evidence, sometimes referred to as "a convincing mosaic of circumstantial evidence." *Ridings v. Riverside Med. Ctr.,* 537 F.3d 755, 771 (7th Cir. 2008). The convincing mosaic may include (1) "suspicious timing, ambiguous statements oral or written, and other bits and pieces from which a retaliatory intent might be drawn," (2) "evidence, but not necessarily rigorous statistical evidence, that similarly situated employees were treated differently," or (3) "evidence that the employer offered a pretextual reason for an adverse employment action." *Perry v. Bath & Body Works, LLC*, 993 F. Supp. 2d 883, 900 (N.D. Ind. 2014) (citing *Perez v. Thorntons, Inc.,* 731 F.3d 699, 711 (7th Cir. 2013)).

9

To show pretext, a plaintiff must demonstrate that the decision maker's reason for the termination was dishonest and that the true reason was motivated by discriminatory animus. *See Benuzzi v. Bd. of Educ.,* 647 F.3d 652, 663 (7th Cir. 2011); *Simpson v. Off. of Chief Judge of Circuit Court of Will Cnty.*, 559 F.3d 706, 715 (7th Cir. 2009). "A plaintiff shows that a reason is pretextual 'directly by persuading the court that a discriminatory reason more likely motivated the defendants or indirectly by showing that the defendants' proffered explanation is unworthy of credence.'" *Blise v. Antaramian,* 409 F.3d 861, 867 (7th Cir. 2005) (citations omitted). "The focus of a pretext inquiry is whether the employer's stated reason was honest, not whether it was accurate, wise or well-considered." *Stewart v. Henderson,* 207 F.3d 374, 378 (7th Cir. 2000). On this issue, this Court has noted that it "does not sit as a super-personnel department; [its] only concern with respect to pretext is the honesty of an employer's explanation." *Bailey v. Standard Reg. Co.*, No. 1:05-cv-943-SEB-JMS, 2007 WL 671041, at *6 (S.D. Ind. Feb. 28, 2007) (citing *Nawrot v. CPC Intern.,* 277 F.3d 896, 906 (7th Cir. 2002)).

In his response, without citation to any supporting case law, Mr. Bennett attempts to provide evidence that Thunderdome's legitimate, non-discriminatory reason for terminating his employment is a pretext to retaliatory animus.[2] To do so, Mr. Bennett first falsely alleges that Thunderdome never reprimanded him for deficiencies in his performance prior to his August 23, 2019 workplace injury and that he only took smoke breaks when it had been approved by his manager. [Dkt. 45 at 16.] As explained in detail above in Section II.A., the undisputed evidence of Mr. Bennett's testimony and the testimony of Thunderdome management establishes that, at a minimum, Thunderdome orally counseled Mr. Bennett regarding his performance for violation of

---

[2] Although Thunderdome does not directly address it in this reply, Thunderdome reiterates its argument made in its original memorandum that Mr. Bennett's FMLA retaliation claim is doomed because he cannot establish that he engaged in protected activity. [*See* Dkt. 43 at 17-25; *see also* Dkt. 44 at 5-14.]

10

its Smoking Policy prior to his August 23, 2019 workplace injury. [Dkt. 42-3, Bennett Dep. 60:3-10, 61:10-14; *see also* Dkt. 42-7, Martin Dep. 24:4-12; Dkt. 42-5, Tindell Dep. 21:15-24, 36:14-24; Dkt. 42-8, Tindell Decl. at ¶¶ 5-8; Dkt. 43 at 6-12.] In addition, Mr. Bennett provides excuses for only *three* of the *six* written warnings that he received in October 2019 that lead to his termination. [Dkt. 45 at 16-17.] Essentially, Mr. Bennett's argument is that he should not have received three of the six written warnings, and, therefore, Thunderdome must be lying about the reason it terminated his employment. As explained in detail below, Mr. Bennett's argument ultimately fails because he provides no evidence that Thunderdome's reason for terminating him is a lie to cover up some retaliatory animus for his need for FMLA leave due to his workplace injury.

First, Mr. Bennett does not even attempt to provide excuses for three of the six written warnings that he received in October 2019. [*See generally* Dkt. 45 at 16-17.] Notably, Mr. Bennett provides no excuses for the following written warnings: (1) his October 10, 2019 written warning for improperly completing the food order [Dkt. 42-11]; (2) his October 24, 2019 written warning for again failing to properly place the food order [Dkt. 42-13]; and (3) his October 24, 2019 written warning for failure to complete the prep list for his shift. [Dkt. 42-14; *see also* Dkt. 43 at 8-12.] Indeed, Mr. Bennett cannot offer an excuse for at least one of these written warnings because he admitted during his deposition that he had incorrectly completed the food order that resulted in his October 10, 2019 written warning. [Dkt. 42-3, Bennett Dep. 191:19-193:3.] Rather, as explained in detail in Thunderdome's original memorandum, the undisputed evidence shows that Thunderdome's decision to terminate Mr. Bennett's employment was based solely on his history of repeated performance issues that culminated in six performance infractions that he failed to take

11

accountability for during the October 26, 2019 meeting and Mr. Bennett's response offers nothing to establish that Thunderdome's reason is a lie. [Dkt. 43 at 6-12.]

Second, in his response, Mr. Bennett offers excuses for why he believes that he should not have received the other three written warnings. [Dkt. 45 at 16-17.] For instance, Mr. Bennett attempts to create an issue of genuine fact by arguing that he should not have received a written warning on October 9, 2019 because he was late to work due to his workplace injury. [Dkt. 45 at 16.] Even if that were true, Mr. Bennett has produced no evidence that Thunderdome improperly issued him a written warning for being late *in retaliation* for his workplace injury. Rather, Mr. Bennett had been able to arrive on time to work on time from August 23, 2019 through October 9, 2019 and his medical records did not indicate that he needed a flexible schedule as an accommodation or work restriction. [*See generally* Dkt. 43 at 12-16.] Accordingly, there is no evidence that his October 9, 2019 written warning was in retaliation for his workplace injury.

Mr. Bennett also alleges that he did not smoke on October 23, 2019 in violation of Thunderdome's Smoking Policy by arguing that he only smoked during scheduled breaks or with Thunderdome management approval. [Dkt. 45 at 16.] Again, this is directly contradicted by Mr. Bennett's testimony and Thunderdome management's testimony. [*See supra* Section II.A.; Dkt. 43 at 6-12.] Finally, Mr. Bennett alleges that he should not have received a written warning for leaving work on October 23, 2019 without authorization because Mr. Downs instructed him to go home. [Dkt. 45 at 16.] Again, even if true, Mr. Bennett cites to no evidence that Mr. Downs instructed him to go home and then issued him a written warning *in retaliation* for his workplace injury. Accordingly, it is clear that Mr. Bennett does not have any evidence of retaliation beyond his own subjective belief that some factor other than his performance issues must have been reason for his termination. *See, e.g., Rand v. CF Indus., Inc.*, 42 F.3d 1139, 1146 (7th Cir. 1994)

("Inferences and opinions must be grounded on more than flights of fancy, speculations, hunches, intuitions, or rumors, and '[d]iscrimination law would be unmanageable if disgruntled employees . . . could defeat summary judgment by affidavits speculating about the defendant's motives.'") (citations omitted).

Any purported belief that Mr. Bennett was terminated in retaliation for needing FMLA leave is dispelled by the undisputed facts in the record. At the end of the day, there is no evidence permitting a reasonable factfinder to conclude that Mr. Bennett was terminated in retaliation for attempting or needing to take FMLA leave. [*See* Dkt. 43 at 3-16, 25-31.] Mr. Bennett attempts to guide the Court in a different direction by claiming that he should not have received three of the six written warnings. [Dkt. 45 at 16-17.] Regardless, the issue is only whether Thunderdome is lying about its reason for terminating him to cover up its retaliatory intent. *See Vaughn v. Radio One of Ind., L.P.*, 151 F. Supp. 3d 877, 890 (S.D. Ind. 2015) ("'Even if the business decision was ill-considered or unreasonable, provided that the decision maker honestly believed the nondiscriminatory reason he gave for the action, pretext does not exist.'" (quoting *Little v. Ill. Dep't of Rev.*, 369 F.3d 1007, 1012 (7th Cir. 2014) (collecting cases)); *see also Ineichen v. Ameritech*, 410 F.3d 956, 961 (7th Cir. 2005) ("It is not the court's concern that an employer may be wrong about its employee's performance, or may be too hard on its employee. Rather, the only question is whether the employer's proffered reason was pretextual, meaning that it was a lie.") (quoting *Ransom v. CSC Consulting, Inc.*, 217 F.3d 467, 471 (7th Cir. 2000)). [*See also* Dkt. 43 at 6-12, 25-31.] In order for Mr. Bennett's pretext theory to prevail, the Court must believe that at least three members of Thunderdome management have conspired to concoct multiple performance issues, and falsify six written warnings, emails, and text messages in order to terminate his employment after accommodating his workplace injury for two months. Because Mr.

13

Bennett has presented no evidence that Thunderdome's reason for terminating him was pretextual, his FMLA retaliation claim fails.

### 2. Mr. Bennett Cannot Show Pretext for Worker's Compensation Retaliation.

Because Mr. Bennett does not have direct evidence that Thunderdome terminated his employment because of his worker's compensation claim and/or his complaint about his worker's compensation claim, "he must rely on indirect evidence of retaliatory motive, such as proximity in time between the filing of the claim and the termination or evidence that the employer's asserted lawful reason for the discharge is a pretext." *Hudson v. Wal-Mart Stores, Inc.*, 412 F.3d 781, 785 (7th Cir. 2005) (citing *Powdertech, Inc. v. Joganic,* 776 N.E.2d 1251, 1262 (Ind. Ct. App. 2002)). Like under the FMLA, Mr. Bennett can establish pretext by demonstrating that Thunderdome's explanation for the firing was either dishonest or "patently inconsistent with the evidence before the court." *Id.* (quoting *Markley Enters., Inc. v. Grover,* 716 N.E.2d 559, 565 (Ind. Ct. App. 1999)).

In his response, Mr. Bennett puts forth alleged proximity evidence by misinterpreting the evidence and omitting key facts. Specifically, Mr. Bennett alleges that he "complained one day in support of his worker's compensation claim, and Thunderdome fired him the very next day." [Dkt. 45 at 19.] To clarify the dates, this would mean that Mr. Bennett made this complaint on October 25, 2019 because he was terminated on October 26, 2019. [Dkt. 43 at 6-16.] Mr. Bennett's allegations, however, are without merit for three reasons.

First, the Seventh Circuit has explained that "timing evidence is rarely sufficient in and of itself to create a jury issue on causation. Indeed, in the analogous Title VII context, we have held that timing, 'standing alone, does not create a genuine issue as to casual connection.'" *Hudson*, 412 F.3d at 787 (citations omitted). Here, Mr. Bennett offers nothing more than timing evidence to attempt to create a genuine issue of fact, but that is not enough. *See id.*

14

Second, in his response, Mr. Bennett fails to mention that his complaint regarding the worker's compensation claim occurred only *after* he had received two performance infractions on October 9, 2019 and October 10, 2019 [Dkt. 42-10; Dkt. 42-11], and had committed four additional performance infractions on October 23, 2019 [Dkt. 42-12; Dkt. 42-13; Dkt. 42-14; Dkt. 42-15], as well as numerous oral counselings prior to his transfer to The Eagle [Dkt. 43 at 6-8]. Specifically, Mr. Bennett alleges that, on October 25, 2019, he complained to Mr. Tindell and Mr. Downs regarding his worker's compensation claim. [Dkt. 42-3, Bennett Dep. 204:19-206:22, 207:20-208:18; *see also* Dkt. 45 at 18-19.] But Mr. Bennett testified that he complained only *after* he had received two performance infractions on October 9, 2019 and October 10, 2019 [Dkt. 42-3, Bennett Dep. 207:20-208:25; *see also* Dkt. 42-10; Dkt. 42-11.] In addition, Mr. Bennett had also committed four additional performance infractions on October 23, 2019 *prior to* complaining about his worker's compensation claim. [Dkt. 42-12; Dkt. 42-13; Dkt. 42-14; Dkt. 42-15; *see also* Dkt. 43 at 8-12.] Thus, since Thunderdome had issued two written warnings for Mr. Bennett's behavioral and performance issues and Mr. Bennett had committed four performance infractions two days before his complaint regarding his worker's compensation claim, any proximity in time between Mr. Bennett's complaint and his termination does not suffice to show causation. *See Hudson*, 412 F.3d at 786 (affirming summary judgment for employer on a worker's compensation retaliation claim and finding that timing evidence was insufficient to establish retaliatory intent where plaintiff employee was fired "a few days" after inquiring about filing a worker's compensation claim, but the terminating event happened *before* the employee's inquiry).

Third, Mr. Bennett mistakenly believes that Thunderdome was responsible for approving any of the medical care that he needed as a result of his workplace injury. However, as explained in detail in Thunderdome's original memorandum, once Thunderdome files a worker's

compensation claim, the Cincinnati Insurance Companies ("CIC") processes the claim and handles approval of any additional medical care and the payments of the medical claims. [Dkt. 43 at 4-5.] Accordingly, Mr. Bennett has produced no evidence that Thunderdome was responsible for the alleged slow walking of his worker's compensation process and has produced no evidence that his alleged complaint regarding CIC's handling of his claim lead to his termination.

Because Mr. Bennett has presented no evidence that Thunderdome's reason for terminating him was pretextual, his worker's compensation retaliation claim fails.

IV. **CONCLUSION**

For the reasons set forth in Thunderdome's original memorandum and its response, the Court should deny Mr. Bennett's motion for partial summary judgment and enter summary judgment in favor of Thunderdome on all claims asserted by Mr. Bennett in this lawsuit.

Respectfully submitted,

*Erica M. Knear*
Erica M. Knear, Atty. No. 35028-53
Taft Stettinius & Hollister LLP
One Indiana Square, Suite 3500
Indianapolis, IN 46204
(317) 713-3500 – telephone
(317) 713-3699 – fax
eknear@taftlaw.com

Sarah Clay Leyshock, OH Atty. No. 0081695
Taft Stettinius & Hollister LLP
425 Walnut Street, Suite 1800
Cincinnati, OH 45202
(513) 381-2838 – telephone
(513) 381-0205 – fax
sleyshock@taftlaw.com
*Admitted Pro Hac Vice*

*Counsel for Defendant*