UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| RYAN BENNETT, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 1:21-cv-03027-RLY-MJD |
| ) | |
| THUNDERDOME RESTAURANTS LLC, ) | |
| ) | |
| Defendant. ) | |

**ENTRY ON THE PARTIES' CROSS MOTIONS FOR SUMMARY JUDGMENT**

Plaintiff, Ryan Bennett, alleges his former employer, Thunderdome Restaurants LLC, terminated him after suffering a workplace injury. He claims Thunderdome interfered with his substantive rights under the Family Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601 *et seq*. and terminated him in retaliation for exercising his rights under the FMLA. He also claims Thunderdome terminated him in retaliation for filing a worker's compensation claim under Indiana state law. Thunderdome maintains it fired Plaintiff for performance-related reasons.

Before the court is Thunderdome's motion for summary judgment on Plaintiff's claims, and Plaintiff's motion for summary judgment on his FMLA interference claim. As explained below, the court **GRANTS** Defendant's motion on Plaintiff's FMLA interference and retaliation claims and **DENIES** Plaintiff's motion on his FMLA interference claim. Plaintiff has not produced evidence that tends to show he suffered from a "serious health condition" within the meaning of the FMLA. The court **RELINQUISHES** supplemental jurisdiction over Plaintiff's state law retaliation claim.

1

## I. Legal Standard

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In making this determination, the court construes the evidence in the light most favorable to the nonmoving party and draws all reasonable inferences in favor of that party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Brown v. Advocate S. Suburban Hosp.*, 700 F.3d 1101, 1104 (7th Cir. 2012). However, a court's "favor toward a nonmoving party does not extend to drawing inferences which are supported only by speculation or conjecture." *Brown*, 700 F.3d at 1104. Rather, a genuine issue of material fact exists only if there is enough evidence for a reasonable jury to return a verdict in favor of the nonmoving party. *Id.*

## II. Background

### A. Plaintiff's Employment with Thunderdome

Thunderdome owns and operates three restaurants in Indianapolis relevant to this case—Bakersfield, Krueger's Tavern, and The Eagle. (Filing No. 42-8, Tindell Decl. ¶ 2). Plaintiff began working as an Assistant Kitchen Manager for Thunderdome at its Bakersfield restaurant on July 27, 2018. (Filing No. 42-6, Muchnicki Decl. ¶ 4; Filing No. 42-3, Plaintiff Dep. at 33, 44). Prior to his workplace injury on August 23, 2019, Thunderdome management orally counseled Plaintiff multiple times over his poor work performance. (Filing No. 42-7, Martin Dep. at 24; Filing No. 42-5, Tindell Dep. at 21, 36; Tindell Decl. ¶¶ 5-8). According to Regional Manager Ricky Tindell, Plaintiff was frequently missing from his shift when not on an approved break and took smoke breaks

during busy hours.  (Tindell Dep. at 21, 36; Plaintiff Dep. at 61 ("Q: So if Thunderdome management testifies that they counseled you on taking smoke breaks when you were not permitted, are they going to be telling a lie?  A: No.")).

On July 15, 2019, Tindell reassigned Plaintiff to Krueger's Tavern due to ongoing performance issues.  (Tindell Decl. ¶ 7).  Tindell hoped Plaintiff would be able to perform better at Krueger's because it was a smaller restaurant with a smaller kitchen and menu.  (*Id.*).  Plaintiff's performance did not improve, so Tindell reassigned Plaintiff again to The Eagle four weeks later.  (*Id.* ¶ 8).  The Eagle had a larger staff that Tindell hoped could provide more structure and support for Plaintiff.  (*Id.*).

### B.     Plaintiff's Workplace Injury

On August 23, 2019, Plaintiff injured himself while lifting a beer keg as part of his workplace duties at The Eagle.  (Plaintiff Dep. at 88; Filing No. 41-1, Plaintiff Aff. ¶ 6).  Plaintiff informed his manager, Dayton Neely, of the incident.  (Filing No. 42-17, Employee Injury Report; Plaintiff Dep. at 88, 90-91, 93).  Neely filled out a workplace injury report and told Plaintiff that he needed to leave and seek medical treatment from Concentra Occupational Health, Thunderdome's worker's compensation[1] medical provider.  (Plaintiff Dep. at 92; Tindell Decl. ¶ 9; Filing No. 42-4, Muchnicki Dep. at 44-45).  Plaintiff was then seen by Dr. Jared Shields who diagnosed him with a right inguinal

---

[1] Thunderdome filed a worker's compensation claim with Cincinnati Insurance Company on August 27, 2019, for Plaintiff's workplace injury.  (Employee Injury Report at 10-15).  From there, Cincinnati Insurance handled the approval of any additional medical care and the payments of the medical claims.  (Muchnicki Decl. ¶¶ 5-7; Muchnicki Dep. at 86-88).

3

hernia and severe right groin pain. (Filing No. 42-18, Concentra Medical Records ("CMR") at 396-418, 398; Plaintiff Dep. at 93). Dr. Shields put in a referral for general surgery and released Plaintiff to return to work for an entire shift with workplace restrictions, including a lifting restriction of 10 pounds. (CMR at 398). Dr. Shields noted that Plaintiff should not perform tasks that exacerbate pain, and that he be allowed to sit for parts of his shift to alleviate pain. (*Id*.). Plaintiff returned to work the next day with restrictions. (Plaintiff Dep. at 103).

Plaintiff continued to have follow-up appointments with doctors from Concentra though October 2019. (CMR at 355-395). After each visit, Plaintiff was returned to work with restrictions. (*Id.* at 356, 368, 378, 388). Thunderdome accommodated his work restrictions by placing him on light duty work. (Tindell Decl. ¶ 9).

On November 4, 2019, Dr. Larry Stevens surgically repaired Plaintiff's hernia. (Filing No. 42-22, Methodist Medical Records at 205; Plaintiff Dep. at 199, 261). Since that surgery, Plaintiff has received no additional medical care for that condition. (*See generally* CMR; Filing No. 42-21, IU Health Medical Records at 258-263).

### C.    Plaintiff's Termination

In October 2019, Plaintiff received six written warnings. He received one on October 9 for being late for his 4:00 p.m. shift. (Filing No. 42-10, Oct. 9 Written Warning). He received another on October 10 for negligently completing a food order. (Filing No. 42-11, Oct. 10 Written Warning). Among other things, he ordered 21 cases of grape tomatoes which resulted in costs of $926.14 for unnecessary product. (*Id.*; *see also* Filing No. 42-13, October 24 Written Warning).

Plaintiff received four written warnings on October 23, 2019. The first was for taking a smoke break during peak business hours. (Filing No. 42-12, Oct. 24 Written Warning). The second was for failing again to properly order produce for his shift. (Filing No. 42-13, Oct. 24 Written Warning). The third was for failing to properly complete the prep list for his shift and for failing to order the correct produce to complete the list. (Filing No. 42-14, Oct. 24 Written Warning). The last was for leaving his shift early without notifying his direct supervisor or general manager for approval. (Filing No. 42-15, Oct. 24. Written Warning). Three days later, and eight days before his surgery, Thunderdome terminated Plaintiff's employment. (Tindell Dep. at 65-67, 78; Tindell Decl. ¶¶ 14-16).

**III.   Discussion**

The FMLA grants eligible employees the right to take leave of up to twelve work weeks in any twelve-month period where the employee has a serious health condition that renders her unable to perform the functions of her position. 29 U.S.C. § 2612(a). The FMLA makes it unlawful to "interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under [the FMLA]." 29 U.S.C. § 2615(a)(1). It is also unlawful for any employer to retaliate against an employee for exercising her rights under the FMLA. 29 U.S.C. § 2615(a)(2). The court begins with Plaintiff's FMLA interference claim.

    **A.   FMLA Interference Claim**

To prevail on his interference claim, Plaintiff must show, among other things, that he was entitled to take leave under the FMLA. *Hansen v. Fincantieri Marine Grp., LLC*, 763 F.3d 832, 836 (7th Cir. 2014).

An employee is entitled to take leave under the FMLA if he suffers from a "serious health condition" that renders him unable to perform the functions of his position. *Id.* A "serious health condition" is defined, in part, as "an illness, injury, impairment, or physical or mental condition that involves . . . continuing treatment by a health care provider." 29 U.S.C. § 2611(11)(B). The term "serious health condition" includes "chronic conditions." 29 C.F.R. § 825.115(c). Chronic conditions are defined as "[a]ny period of incapacity or treatment for such incapacity" which:

(1) Requires periodic visits (defined as at least twice a year) for treatment by a health care provider, or by a nurse under direct supervision of a health care provider;

(2) Continues over an extended period of time (including recurring episodes of a single underlying condition); and

(3) May cause episodic rather than a continuing period of incapacity (e.g., asthma, diabetes, epilepsy, etc.).

29 C.F.R. § 825.115(c). Incapacity, in turn, means the "inability to work . . . or perform other regular daily activities due to the serious health condition." 29 C.F.R. § 825.113(b).

Plaintiff argues his hernia was a chronic serious health condition because he was seen by doctors approximately eight times prior to his surgery. The problem here is twofold. First, Plaintiff did not experience any period of incapacity. Rather, from August 23, 2019, through October 26, 2019, Plaintiff sought medical treatment and was released to work with restrictions on each of those occasions. *Mason v. St. Vincent Hosp.*

6

*and Health Care Ctr.*, No. 1:03-cv-LJM-VSS, 2004 WL 3242339, at *6 (S.D. Ind. Nov. 8, 2004) (granting summary judgment for employer where plaintiff produced no evidence that any healthcare provider opined that plaintiff was unable to work due to her illness); *Levine v. Children's Museum of Indianapolis*, No. IP00-0715-C-H/G, 2002 WL 180054, at *6 (S.D. Ind. July 1, 2002) (granting summary judgment for employer where plaintiff offered no evidence from a health care provider showing a need to take time off work), *aff'd mem.*, 61 F. App'x 298 (7th Cir. 2003).

Second, Plaintiff's condition did not continue over "an extended period of time." Although the regulations do not define "an extended period of time," the Seventh Circuit has held that a duration of "over four months" satisfies that element. *Burnett v. LFW, Inc.*, 472 F.3d 471, 478 (7th Cir. 2006) (holding that plaintiff had a chronic condition that continued for "over four months"). Here, Plaintiff's condition lasted approximately two and-a-half months—from August 23, 2019, through his surgery on November 4, 2019. There is no evidence that he continued receiving any medical treatment for his injury after November 4, 2019. Therefore, Plaintiff has failed to establish that he had a chronic serious health condition under the FMLA. As Plaintiff was not entitled to take leave under the FMLA, Thunderdome's motion for summary judgment on Plaintiff's interference claim must be **GRANTED**, and Plaintiff's motion for summary judgment on that claim must be **DENIED**.

    **B.**    **FMLA Retaliation Claim**

To prevail on his FMLA retaliation claim, Plaintiff must establish that (1) he engaged in statutorily protected activity; (2) he suffered an adverse employment action;

7

and (3) a causal connection exists between the protected activity and the adverse action. *Pagel v. TIN Inc.*, 695 F.3d 622, 631 (7th Cir. 2012). Plaintiff's claim is doomed from the start, given his inability to establish a prima facie case of FMLA interference. Because Plaintiff cannot demonstrate that he was entitled to FMLA leave, he cannot be said to have engaged in protected activity. *Matthys v. Wabash Nat'l*, 799 F. Supp. 2d 891, 907 (N.D. Ind. 2011) (citing *Smith v. Hope Sch.*, 560 F.3d 694, 702 (7th Cir. 2009) (holding that if plaintiff's request for FMLA leave was invalid, "then [he] was not engaging in protected activity and thus could not have been fired for asserting h[is] rights under the FMLA")). Thunderdome's motion for summary judgment on Plaintiff's FMLA retaliation claim is therefore **GRANTED**.

    C.    **State Law Retaliation Claim**

The court now turns to Plaintiff's state law retaliation claim. The exercise by a district court of supplemental jurisdiction over state law claims is governed by 28 U.S.C. § 1367, which expressly permits the court to decline the exercise of jurisdiction when it has dismissed all claims over which it has original jurisdiction. *See* 28 U.S.C. § 1367(c)(3). The court has dismissed all claims over which it has original jurisdiction.

"The general rule is that when as here the federal claim drops out before trial . . . , the federal district court should relinquish jurisdiction over the supplemental claim." *Van Harken v. City of Chicago*, 103 F.3d 1346, 1354 (7th Cir. 1997). A federal district court will generally only exercise supplemental jurisdiction after adjudicating a federal claim when deciding the state law claims "best serves the principles of economy, convenience, fairness, and comity which underlie" supplemental jurisdiction. *Carnegie-Mellon Univ.*

*v. Cohill*, 484 U.S. 343, 357 (1988). That generally means exercising jurisdiction where "the appropriate disposition of the claims [is] crystal clear and it [is] otherwise efficient to do so." *Bilow v. Much Shelist Freed Denenberg Ament & Rubenstein, P.C.*, 277 F.3d 882, 896 (7th Cir. 2001).

Absent any remaining federal claims against Thunderdome, the court, in its discretion, hereby relinquishes supplemental jurisdiction over Plaintiff's state law claim. *See Groce v. Eli Lilly & Co.*, 193 F.3d 496, 500-01 (7th Cir. 2009) (noting that once federal claims are dismissed, supplemental jurisdiction is discretionary as to the remaining state law claims). The disposition of Plaintiff's state law retaliation claim is not crystal clear, and Indiana courts are better suited to resolving a dispute involving Indiana law than a federal district court. *See, e.g., Day v. Union Mines, Inc.*, 862 F.2d 652, 660 (7th Cir. 1988) (explaining that a state court has "expertise in applying its own laws"). Accordingly, Plaintiff may pursue his retaliation claim in state court.

**IV.    Conclusion**

For the reasons set forth above, the court **GRANTS IN PART** Defendant's Motion for Summary Judgment (Filing No. 42) and **DENIES** Plaintiff's Motion for Summary Judgment (Filing No. 40). The court **RELINQUISHES** jurisdiction over Plaintiff's state law retaliation claim.

Final judgment shall issue forthwith.

**SO ORDERED** this 2nd day of February 2023.

RICHARD L. YOUNG, JUDGE
United States District Court
Southern District of Indiana

9

Distributed Electronically to Registered Counsel of Record.